UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 14 CR 674 |
| v. ) | |
| ) | Honorable Virginia M. Kendall |
| ALDO BROWN ) | |

### GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby moves this Court, *in limine*, for entry of the following orders for the trial of defendant Aldo Brown, as follows: (1) the Court should bar allegations of witness wrongdoing not involving dishonesty and not relevant to a witness's alleged bias; (2) the Court should exclude evidence and argument about lawfulness and non-corrupt conduct by defendant; (3) the Court should bar defendant from referencing punishment or collateral consequences of conviction; (4) the Court should bar defendant from referencing discovery issues in the jury's presence; (5) the Court should bar the opinions of the proffered defense expert witness under FED. R. EVID. 401, 403, 704(b); and (6) the Court should admit an out-of-court statement of Officer A to Victim A as non-hearsay.

### BACKGROUND

On November 18, 2014, the grand jury returned a three-count indictment against defendant Aldo Brown. The charges relate to the defendant's unlawful seizure and use of unreasonable force, with respect to Victim A, on September 27, 2012 (Count One), and the accuracy of the defendant's own police reports documenting the incident with Victim A (Counts Two and Three), in violation of Title 18, United States Code, Sections 242 and 1519. The case is scheduled for trial on October 19, 2015.

1

With respect to Count One, the government anticipates that it will present evidence in the form of a video recording that depicts the actions of the defendant, along with his partner—Officer A — inside of a convenience store located on East 76th Street in Chicago on September 27, 2012, the date of the encounter between the defendant and Victim A.

The video recording is from the store's surveillance camera system and does not have any audio. It will depict the following: on September 27, 2012, the defendant and Officer A arrived at the convenience store in an unmarked squad car and forced certain individuals into the store. Victim A was already inside the store when the officers arrived. Once inside the store, the defendant and Officer A placed some of the individuals in handcuffs and began searching the store and patting down some of the individuals in handcuffs. Victim A was initially handcuffed and, after a few minutes, Officer A removed the handcuffs from Victim A. Subsequently, the defendant instructed Victim A to lift his t-shirt and unbutton his pants in order to visually inspect Victim A's waistband. Victim A complied and the defendant began to punch Victim A. The defendant then choked Victim A, as the defendant pushed Victim A against a refrigerator and Victim A handed the defendant a bag containing marijuana. The defendant struck Victim A again, dragged him down the aisle of the store and placed Victim A in handcuffs. The video also depicts that at a time when Victim A was lying face down on the floor of the convenience store, again in handcuffs, the defendant recovered a firearm from Victim A's rear pants pocket and that the defendant later kicked Victim A.

The government will also present eyewitness testimony from individuals who were inside the store when the incident depicted on video took place, including Victim A. Victim A will testify that he was an employee at the convenience store. More generally, these witnesses will testify regarding their observations at the time of the incident as well as the statements made by the

2

defendant and Victim A during the encounter. According to some of the witnesses, at the time that Officer A un-cuffed Victim A, Officer A told Victim A that he was un-cuffing him because he didn't want witnesses to say that Victim was cuffed when Officer A hit him, or words to that effect. According to other witnesses, as Officer A un-cuffed Victim A, Officer A said, "You wanna hit me?" or words to the effect that Officer A was going to fight Victim A. All of the witnesses are expect to testify that Victim A appeared intimidated by the statements and was compliant with the officers.

Count Two of the indictment incorporates the allegations in Count One of the indictment and also alleges that defendant, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the FBI, knowingly falsified and made a false entry in a Chicago Police Department tactical response report under the specific event number 1227108076. (Dock. #1 at p. 3, ¶ 2.) Count Two further specifies that the false statements included "that Victim A was an 'active resister,' who 'fled' and 'pulled away,' and which did not indicate that defendant punched and kicked Victim A when defendant knew that Victim A did not actively resist, attempt to flee the situation, or pull away from defendant that defendant." (Id.)

With respect to Count Three, the indictment incorporates the allegations set forth in Count One and alleges that defendant also falsified and made a false entry in the Chicago Police Department arrest report for the same incident. (Dock. #1 at p. 4, ¶ 4.) The indictment identifies the portion of the arrest report that contained multiple false statements and specifies that "defendant knew that the arrest report was false for multiple reasons, including:

(a) defendant Aldo Brown did not observe a firearm on Victim A at the time of the field interview;
(b) defendant Aldo Brown did not know that Victim A had a firearm in his possession until after defendant Aldo Brown struck Victim A multiple times, handcuffed him for a second time, and

3

Victim A was lying on the floor of the convenience store; and (c) Victim A did not pull away from defendant Aldo Brown as indicated in the arrest

(Dock. #1 at p. 4-5, ¶¶ 2(a)-(c)).

## ARGUMENT

I. **The Court Should Bar Allegations of Witness Wrongdoing Not Involving Dishonesty and Not Relevant to Showing a Witness's Bias.**

The government has and will continue to produce potential impeachment material for the witnesses in this case. Out of an abundance of caution, the government has produced various records that arguably fall within the ambit of *Giglio v. United States*, 405 U.S. 150 (1972), but nonetheless do not constitute admissible impeachment. By this motion, the government moves this Court to preclude defense counsel from introducing at trial improper impeachment questioning or evidence, including during the cross-examination of government witnesses.

As a general matter, under Federal Rule of Evidence 608(b), a defendant is permitted to inquire into specific bad acts of a witness only if such acts are "probative of truthfulness or untruthfulness," *United States v. Manske*, 186 F.3d 770, 774 (7th Cir. 1999), and if the probative value of the evidence outweighs any unfairly prejudicial effect. *United States v. Saunders*, 166 F.3d 907, 920 (7th Cir. 1999). The same is true under Rule 609(a), which permits the introduction of a witness's criminal convictions but only if they pertain to truthfulness. *See* FED. R. EVID. 609(a). The purpose of these Rules "is to allow a party to attempt to cast doubt on a witness's reliability for telling the truth." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (en banc). For example, "[a]cts involving fraud or deceit" clearly cast doubt on a witness's truthfulness. *Id*. In contrast, non-fraud offenses, such as "murder, assault, [and] battery," may be probative of violence, but they do not bear on a witness's reliability for telling the truth. *Id*.

4

If the defense wishes to delve into specific prior bad acts by government witnesses, and so the Court can make the appropriate rulings, the government requests that defense counsel identify the prior conduct or convictions about which they intend to cross-examine a given witness and demonstrate how the conduct or conviction is probative of truthfulness. This should occur outside the presence of the jury and before a witness testifies at trial, to prevent jury nullification and undue prejudice.

To facilitate pretrial rulings, the government has identified possible past acts about which the defense may seek to ask witnesses. Below, the government provides a brief description of the prior bad act or conviction and an explanation of its inadmissibility.

    A.    <u>Victim A</u>

Victim A has two misdemeanor convictions: a 2011 conviction for possession of cannabis and a 2015 conviction for disorderly conduct. Victim A was sentenced to 3 months of supervision for possession of cannabis in 2011 and a $540 fine. In 2015, Victim A was sentenced to seven days' time served[1] and 166 days' probation for disorderly conduct. Both convictions are inadmissible and the underlying specific acts may not be used to impeach Victim A during cross-examination. Similarly, Victim A has told law enforcement that he was a member of gang when he was in high school, but was not a member of a gang at the time that the incident took place (when Victim A was approximately 24 years old). The defense should not be allowed to question Victim A regarding his gang membership in high school under Rule 403 and the Seventh Circuit's law regarding propensity evidence under Rule 404(b).

First, Federal Rule of Evidence 609(a)(1) permits the defense to introduce a criminal conviction in attacking a witness's character for truthfulness. FED. R. EVID. 609(a)(1). This

---

[1] The judgment sets forth that Victim A was sentenced to 180 days, credited for 7 days of time served and the remainder of the custodial sentence was suspended.

5

Rule, however, only applies to felonies—that is, crimes that are punishable by more than one year of imprisonment. *Id*. Rule 609(a)(2), in turn, allows the defense to impeach a witness using a misdemeanor conviction, but only if "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." FED. R. EVID. 609(a)(2). Under Rule 608(b), the defense also may impeach the witness using a misdemeanor conviction, but again, only if the specific acts in question are "probative of the [witness's] character for truthfulness or untruthfulness." Here, Victim A's illegal possession of a cannabis and incident of domestic battery and the resulting misdemeanor convictions are not probative of Victim A's truthfulness or veracity, so they are not admissible under Rules 608(b) or 609(a). *See Varhol*, 909 F.2d at 1567 (distinguishing between violent offenses, which are not typically probative of veracity, and fraud offenses, which can indicate untruthfulness); *United States v. Miles*, 207 F.3d 988, 994 (7th Cir. 2000) (failure to register gun does not implicate fraud, deceit, or dishonesty, and district court therefore did not err in prohibiting cross-examination on the subject).

Second, the evidence of Victim A's illegal possession of cannabis and domestic violence incident are not relevant. At the outset, the 2015 conviction occurred over two years after the time period alleged in the indictment. Therefore, it could not have affected anyone's conduct or knowledge at the time period of the indictment. *See Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("[W]hen considering a charge of excessive force …, evidence outside the time frame of the [charged incident] is irrelevant and prejudicial.").

With respect to Victim A's 2011 conviction for possession of cannabis, there is no evidence that defendant knew about the conviction when he repeatedly struck Victim A on September 27, 2012. *See Palmquist v. Selvik*, 111 F.3d at 1339. For example, in *Sherrod v.*

6

*Berry*, 856 F.2d 802 (7th Cir. 1988) (en banc), a police officer approached a robbery suspect's car from behind and shot him dead. The district court allowed the introduction of evidence at trial that the victim was unarmed at the time of the altercation, but the Seventh Circuit found that this was reversible error. The Court explained that "[k]nowledge of facts and circumstances gained after the fact … has no place in the … jury's post-hoc analysis of the reasonableness of the actor's judgment. Were the rule otherwise, … the jury would possess more information than the officer possessed when he made the crucial decision." *Id*. at 805. Following this same logic, there is no evidence that defendant knew about Victim A's 2011 possession of cannabis conviction when he attacked Victim A, and therefore, the evidence is inadmissible.

To the extent the defense intends to use this evidence to argue that Victim A has a character for violence, and thus was more likely to be the first aggressor, that argument, too, is irrelevant and inadmissible. Federal Rule of Evidence 404(a)(2)(B) permits a defendant to offer evidence of an "alleged victim's pertinent trait." FED. R. EVID. 404(a)(2)(B). Rule 405, in turn, allows the evidence to be in the form of reputation evidence or, where the character trait is an "essential element" of the charge, in the form of specific instances of conduct. FED. R. EVID. 405(a)-(b).

The question, then, is whether Victim A's past conduct, including possession of cannabis, reflects a "pertinent trait" that is an "essential element" of the charge. The answer is no and the Seventh Circuit's decision in *Palmquist*, 111 F.3d at 1339, is directly on point. There, in a civil rights action alleging excessive force, the Seventh Circuit affirmed the district court's exclusion of evidence about the victim's schizophrenia, which the defendant alleged was admissible to show the likelihood that he would act aggressively. The Court explained that the evidence about the victim's background was irrelevant to the issue of whether the officer used excessive

7

force, given that it "would have shifted the jury's attention from [the victim's] behavior at the scene, which is material in judging the objective reasonableness of [the officer's] use of force, to information not possessed by [the officer], such as [the victim's] mental state and his physical behavior before the encounter." *Id.* In short, "[b]ecause the excluded evidence in this case occurred outside the presence of the police, they had no personal knowledge of it." *Id.; see also United States v. Smith*, 230 F.3d 300, 308 (7th Cir. 2000) ("The appropriateness of an act of self–defense is judged by the objective reasonableness of the act under the circumstances at the time which it was committed. Thus, specific acts of conduct of the victim, if unknown to the individual claiming self-defense, are necessarily circumstantial in nature. It is only when the specific instances of conduct are known to the one claiming self-defense, and thus could have factored into the decision-making process that resulted in the act, that such instances should be admissible as essential elements of the claim.").

The same logic applies here. There is no evidence that defendant knew about Victim A's prior conviction for possession of cannabis or could have any knowledge about Victim's 2015 conviction for domestic battery. To admit evidence about this conduct—or any other evidence that purportedly demonstrates Victim A's violent character—improperly shifts the focus of the trial from the defendant's knowledge and conduct to inadmissible propensity evidence.

The same is true regarding Victim A's gang membership in high school. There is no evidence that defendant had any knowledge of this at the time that he used force against Victim A, therefore there is no probative value to this evidence. What is relevant are the circumstances at the time that the defendant used force and whether those circumstances made defendant's use of force reasonable. *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) (it is "a fact-intensive inquiry turning on the reasonableness of the particular officer's actions in light of

8

the particular facts and circumstances of the situation faced."). The risk that this evidence will be prejudicial is substantial. *See, e.g., United States v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012) ("There is no question that evidence of a defendant's gang affiliation is potentially prejudicial and inflammatory, as it poses the risk that the jury will associate gang membership with a propensity for committing crimes.") For these reasons, any questioning or evidence regarding these prior bad acts should be precluded pursuant Rule 403.

B. <u>Witness MS</u>

Witness MS was a bystander at the convenience store on September 27, 2012. Witness MS appears to have a 2007 misdemeanor conviction for disorderly conduct for which he was sentenced to 24 hours of public serve and 4 months of supervision.

As set forth above, a misdemeanor conviction is not admissible to attack a witness's character for truthfulness pursuant to Federal Rule of Evidence 609(a)(1). As to Rules 608(b) and 609(a)(1), Witness MS's 2007 disorderly conduct conviction is not probative of his truthfulness or veracity, so it is not admissible. *See Varhol*, 909 F.2d at 1567. Finally, pursuant to Rule 403, this evidence is not probative and highly prejudicial and should also be excluded on this ground.

C. <u>Witness JG</u>

Witness JG was also a bystander at the convenience store on September 27, 2012. Witness JG was handcuffed and patted down by the defendant and Officer A, who did not find any contraband on Witness JG and did not arrest or seek charges against Witness JG. Witness JG has the following prior convictions: (a) a 1996 felony conviction for carry/possession of a firearm (sentenced to one year of conditional discharge); (b) a 2005 felony conviction for possession of a controlled substance (sentenced to 30 hours of public service, two years'

9

probation, and a fine); and (c) in 2008, Witness JG was convicted of misdemeanor attempted/reckless conduct and misdemeanor resisting a peace officer and was sentenced to 6 days' imprisonment (concurrent sentences).

Witness JG's 1996 felony conviction for possession of a firearm is outside the 10 year time period identified in Rule 609(b) and has no probative value. As discussed above, there is no evidence that the defendant had any knowledge of Witness JG's identity, much less this conviction, at the time of the encounter in the convenience store. Therefore, any attempt to impeach Witness JG's credibility with this conviction should be prohibited because the probative value of this conviction does not exceed the risk of unfair prejudice and should be excluded under Rule 403.

The government moves to exclude witness JG's 2005 felony conviction for possession of a controlled substance, pursuant to Rule 403, on the grounds that the undue prejudice far exceeds its probative value. Specifically, the defendant had no knowledge of this bystander's conviction at the time of the incident identified in the indictment, therefore, the conviction is irrelevant to the issues at trial. *Palmquist*, 111 F.3d at 1339.

Finally, defendant's remaining convictions are for misdemeanors that are not probative of truthfulness under Rule 608(b) or 609(a)(2). Thus, evidence or questioning of these convictions should be excluded.

    D.    <u>Witness CB</u>

Witness CB was a bystander at the convenience store on September 27, 2012. Witness CB has three misdemeanor convictions and one felony conviction. Specifically, Witness CB has a 2010 felony conviction for receiving/possessing/selling a stolen vehicle and was sentenced to 60 days credit time served and 2 years' probation. As discussed above, pursuant to Rule 403

10

and *Palmquist*, 111 F.3d at 1339, the government moves to exclude evidence or impeachment by this conviction pursuant to Rule 403 as to this felony conviction.

Witness CB's misdemeanor convictions are all from 2014 and include: domestic battery (sentenced to 10 months' probation), reckless conduct (sentenced to 2 days' imprisonment), and possession of 2.5 to 10 grams of cannabis (sentenced to 3 months' supervision). Once again, these convictions are not admissible under Rule 608(b) or 609(a)(2) and they post-date the relevant time period in the indictment. Accordingly, they should be excluded.

## II. The Court Should Exclude Evidence and Argument Concerning Lawfulness and Non-Corrupt Conduct.

The government respectfully requests that this Court exclude evidence of defendant's lawfulness and/or non-corrupt conduct, except for reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a). Other than testimony from character witnesses falling within the narrow strictures of Rule 405(a), no such evidence is admissible.

Defendant should be precluded, for example, from eliciting evidence that on other occasions he did good police work; was nice and non-abusive to arrestees; and received commendations for particular arrests, investigations, or other law enforcement accomplishments. All of these examples are specific instances of conduct that are not admissible under Rule 405(a). *See* Advisory Committee Notes to Rule 405 (explaining that the Rule is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct). The law is clear: "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012).

In the event that defendant seeks to elicit testimony or present evidence or argument concerning non-corrupt conduct or good acts, the government respectfully requests that the Court require that the issue be raised with Court in advance, out of the jury's hearing, in light of the likelihood that such evidence or argument would be inadmissible. Such an order would avoid surprise and error by providing the government an opportunity to object, and the Court an opportunity to rule, before any such evidence came to the jury's attention.

### III. Defendant Should Be Precluded from Making Reference to Punishment or Collateral Consequences of Conviction.

This Court should preclude the defense from introducing evidence, making argument, or otherwise mentioning the potential penalties he faces. The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) (citing *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997)). This includes discussion of defendant's potential statutory maximum penalty and any speculation about likely or possible sentences of imprisonment. Also forbidden should be any discussion of the collateral consequences of the investigation or conviction, such as the fact that defendant was suspended, placed on desk duty, may lose his job at the Chicago Police Department, any loss of a pension, the impact of conviction on his future law enforcement career, or any variation of these topics. These topics have no probative value: All defendants face a potential adverse impact on their personal lives, and encouraging the jury to speculate about these or other consequences serves only to engender sympathy that is not relevant to the question of defendant's guilt or

innocence.[2]

### IV.    The Court Should Not Permit References to Discovery in the Jury's Presence.

Discovery disputes, whether they arise before or during trial, have no place in front of the jury. Requests for and motions related to discovery made in the jury's presence may create the impression that one side has suppressed information as a means of seeking an unfair advantage and are therefore inappropriate. In fact, it often happens that such requests are made based on a mistaken notion that discovery either has not been tendered, or that it is subject to disclosure. In any event, even if appropriate, requests for discovery easily may be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government respectfully moves to preclude counsel from requesting discovery from witnesses or government counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in front of the jury, and for an order requiring that requests, motions, and comments relating to discovery be made outside the jury's presence.

### V.    The Court Should Exclude John Farrell's Opinion Testimony Pursuant to FED. R. EVID. 401, 403 and 704(b).

In his expert report, John Farrell opines that Victim A's actions, as depicted on the surveillance video, "escalated . . . to the point where a reasonable officer would be placed in fear of receiving a battery" and, therefore, the defendant's use of force was reasonable. (Rpt. at 7.) In his report, Farrell identifies the materials he reviewed and relied on in forming his opinion. These materials consist of: (a) the surveillance video; (b) the arrest report for Victim A; (c) the

---

[2] *See United States v. Manzella*, 791 F.2d 1263, 1269 (7th Cir. 1986); *United States v. DeAlesandro*, 361 F.2d 694, 697 (2d Cir. 1966) ("if the [jurors] were satisfied of guilt beyond a reasonable doubt . . . sympathy or any other reason should not cause them to hesitate to render a verdict against defendant"); *United States v. D'Arco*, 1991 WL 26501, at *4 (N.D. Ill. 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family of a family member"); *United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) ("the [S]ixth [A]mendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court.").

arrest report for Individual A; (d) the tactical response reports submitted by defendant and Officer A; (e) the defendant's statements to Mr. Farrell on July 9, 2015[3]; (f) a Chicago Police Department "4th District Gang Territorial Boundary" Map (*Id.* at Ex. 1); (g) the Chicago Police Department General Order G03-02-02 (titled "Force Options") (*Id.* at Ex. 2); (h) the Chicago Police Department General Order G03-02 (titled "Use of Force Guidelines") (*Id.* at Ex. 3); and (i) Farrell's training and experience. (*Id.* at Ex. 4). (Rpt. 2-3.) Based on his review of the materials, Mr. Farrell concludes:

> My opinion, based on my review of this incident, is that Police Officer Aldo Brown acted in compliance with the Chicago Police Department Policy relative to the use of force. His actions were reasonable and appropriate in response to the actions of [Victim A]. The escalation of the resistance on the part of [Victim A] required the escalation of the response on the part of Police Officer Brown. Police Officer Brown consistently used a response that was among the less aggressive of the available.
> I also think that it [is] important to note that it is easy for me to go through the video of this incident frame by frame to assist in forming an opinion. . . .

(Rpt. at 9.) Mr. Farrell also provides his interpretations of specific actions of the defendant and Victim A, as depicted on the surveillance video. (Rpt. at 5-9.)

"The question of whether a police officer has used excessive force in arresting a suspect is a fact-intensive inquiry turning on the reasonableness of the particular officer's actions in light of the particular facts and circumstances of the situation faced." *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006). Accordingly, the Seventh Circuit has specifically upheld the exclusion of an expert on excessive force in similar circumstances under Fed. R. Evid. 401 and 403. In *Thompson*, the Court held that "the jury, after having heard all of the evidence presented, was in as good a position as the expert to judge whether the force used by the officers

---

[3] On July 28, 2015, the government filed a motion *in limine* to bar Mr. Farrell's proposed expert testimony under *Daubert*. The motion was based, in part, on the fact that the defense had not disclosed all of the basis of Mr. Farrell's opinions, which included the defendant's statements to Mr. Farrell on July 9, 2015. Defendant subsequently produced the notes of the interview to the government, and the government did not file any subsequent motions pursuant to *Daubert*. The instant motion is pursuant to Rules 401, 403, and 704(b).

14

. . . was objectively reasonable given the circumstances in this case." *Id.* For this reason, the Seventh Circuit affirmed Judge St. Eve's exclusion of two experts on use of force pursuant to Rule 403, because the expert testimony "would have induced the jurors to substitute their own independent conclusions for that of the experts." *Id.* In *Thompson*, the Seventh Circuit also held that CPD's General Orders regarding use of force "shed no light on what may or may not be considered 'objectively unreasonable' under the Fourth Amendment" and were inadmissible pursuant to Rule 401. *Id.* at 453-55.

Mr. Farrell's proposed testimony should be excluded pursuant to Rules 401, 403 and 704(b) because the subject matter of his testimony has little or no probative value and will cause undue prejudice. At the outset, it will be the jury's job—not Mr. Farrell's—to determine the ultimate issue in the case: whether the defendant's use of force was reasonable. *Id.* at 457-58. The jury will be instructed to evaluate the surveillance video, the pertinent arrest and tactical reports, the witnesses who testify, their credibility, their recollection of events, and decide whether the defendant defended himself against Victim A or if the defendant attacked Victim A.

Mr. Farrell's opinion offers no value to the jury because the Court will instruct the jury on the law regarding excessive force. *See Jordan v. City of Chicago*, No. 08 C 6902, 2012 WL 88158, at *6 (citing Davis v. Duran, No. 08-C-6314, 2011 WL 2277645, at *7 (N.D. Ill. June 10, 2011)) ("It is role of the judge, not experts, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence"). It is well-established that "'testimony that does little more than tell the jury what result to reach' is unhelpful and thus inadmissible[.]" *Dahlin v. Evangelical Child & Family Agency*, No. 01 C 1182, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002) (quoting *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997)); *see also Thompson*, 472 F.3d at 458; Fed. R. Evid. 704(b).

15

Because the jury will be in just as capable a position as Mr. Farrell to decide the reasonableness of the defendant's actions, his proffered opinions would be gratuitous and would only exert undue influence over the jury. Therefore, Mr. Farrell's proposed testimony has no little or no probative value in this case.

Moreover, Mr. Farrell's opinion is based on several Chicago Police Department Orders (Rpt. at 7, Ex. 2-4), which were held to be irrelevant in *Thompson*. *Id*. at 458 n. 27 (Testimony by proposed experts regarding whether defendant "used excessive force would have likely involved a discussion of the CPD's General Orders, which . . . are not relevant"). Specifically, Mr. Farrell opines that the defendant did not violate CPD General Orders regarding use of force. (Rpt. at 9.) This is not the issue in this case. Moreover, the Seventh Circuit has already held that this evidence is not relevant, under Rule 401, in an excessive force case under the Fourth Amendment. *Id*. at 454 ("the violation of police regulations or even a state law is completely immaterial as to the questions of whether a violation of the federal constitution has been established.")

The risk of undue prejudice from Mr. Farrell's testimony is substantial and outweighs any purported probative value. Mr. Farrell's opinion testimony will confuse the jury and distract from the question of reasonableness under the Fourth Amendment because it relies not just on the CPD General Orders, but defendant's own out-of-court, self-serving statements.[4] *See United States v. Kantengwa*, 781 F.3d 545, 561 (1st Cir. 2015) (quoting *Marvel Characters, Inc.*

---

[4] Mr. Farrell also relies on the 4th District Gang Territorial Boundary Map in his report. This map is irrelevant to the determination of the facts in this case and would be confusing and prejudicial to the jury. It is only proper for the defense to present evidence of what defendant's knowledge of the area was, as opposed to misleading the jury with generalized crime statistics or the existence of gang areas. The defendant's own arrest report is completely devoid of any references to any gang information regarding Victim A or any individuals at the store during the time period of the indictment.

*v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)) (internal quotation marks omitted) ("a party cannot call an expert simply as a conduit for introducing hearsay"); *United States v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014) (expert testimony based on defendant's statements would allow defendant to present "highly selective and favorable statements of defendant to the jury without having to face cross-examination."); *Thompson*, 472 F.3d at 458. In addition, Mr. Farrell credits the defendant's arrest and tactical reports, which are alleged to be false in Counts Two and Three of the Indictment. Therefore, Mr. Farrell's opinion credits documents that the jury has not yet determined to be truthful. For all these reasons, the testimony of Mr. Farrell should be excluded.

**VI.     Motion to Admit Out of Court Statement by Officer to A to Victim A As Non-Hearsay.**

The government expects that certain eyewitnesses to the incident at the convenience store will testify that around the time that Officer A un-cuffed Victim A, Officer A made a statement to the effect of "Do you want to hit me?" and that he was un-cuffing Victim A because Officer A was going to hit him. The witnesses will testify that Victim A appeared intimidated and complied respectfully with the officers' instructions. Subsequently, the defendant approached Victim A, asked Victim A to lift his shirt and show his waistband, as well as unbutton his pants. Victim A complied and was struck by defendant.

The government seeks to admit Officer A's statement to Victim A not for the truth of the matter asserted, but for its effect on Victim A. *See* FED. R. EVID. 801(c). Victim A's conduct leading up to the use of force by the defendant will be central to the issue of whether the defendant willfully used unreasonable force and will be carefully scrutinized by the jury. Victim A's conduct prior to being struck by defendant included being intimidated by Officer A, which makes it less probable that Victim A would have verbally or physically threatened Officer

A or defendant (as defendant suggested in his tactical report or arrest report). Moreover, the jury can be specifically instructed that they are only to consider the evidence for the effect it had on Victim A's behavior and not for the truth of the matter asserted in the statement. Accordingly, the government moves to admit this evidence as highly relevant, non-hearsay statements.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the above motions *in limine*.

          Respectfully submitted,

          ZACHARY T. FARDON
          United States Attorney

By: s/ Jessica Romero
          JESSICA ROMERO
          LINDSAY JENKINS
          Assistant United States Attorneys
          219 South Dearborn St., 5th Floor
          Chicago, Illinois 60604