UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALDO BROWN | No. 14 CR 674<br><br>Judge Virginia M. Kendall |

**GOVERNMENT'S RESPONSE TO DEFENDANT
ALDO BROWN'S POST-TRIAL MOTIONS**

The United States of America, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant Aldo Brown's consolidated post-trial motions.

**I.     Background**

Defendant Aldo Brown was charged in the indictment with use of unreasonable force (Count One), and making false statements in police reports with the intent to impede a federal investigation (Counts Two and Three), in violation of Title 18, United States Code, Sections 242 and 1519.

Defendant's jury trial began on October 19, 2015.  During the course of the trial, the government presented testimony and video evidence of defendant's use of force, defendant's police reports documenting his use of force, and evidence of defendant's training.

At the conclusion of the trial, on October 23, 2015, the jury found the defendant guilty of Count One (use of unreasonable force) and not guilty of Counts Two and Three.

## II. Motion for Judgment of Acquittal

Defendant has filed a motion for a judgment of acquittal pursuant to FED. R. CRIM. P. 29. In that motion, defendant claims that there is insufficient evidence to support the excessive force conviction for Count One. In particular, that there was insufficient evidence of intent. Defendant's arguments are inconsistent with the legal standard of review under Rule 29, with the evidence presented at trial, and the law of excessive force. Therefore, the motion should be denied.

Rule 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When, as here, a defendant makes a Rule 29(a) motion at the close of the government's case, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

"In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014) ("The movant faces a nearly insurmountable hurdle"); *United States v. Jones*, 713 F.3d 336, 339-40 (7th Cir. 2013); *United States v. Berg*, 640 F.3d 239, 246 (7th Cir. 2011); *United States v. Dinga*, 609 F.3d 904, 907 (7th Cir. 2010); *United States v. Morris*, 576 F.3d 661, 665-66 (7th Cir. 2009). The reviewing court will view the "evidence in the light most favorable to the prosecution," and the defendant "'must

convince' the court that, even in that light, 'no rational trier of fact could have found him guilty beyond a reasonable doubt.'" *Warren*, 593 F.3d at 546 (quoting *United States v. Moore,* 572 F.3d 334, 337 (7th Cir. 2009)); *see also United States v. Eller*, 670 F.3d 762, 765 (7th Cir. 2012); *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010) (stating that the inquiry is "whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt"). In other words, a court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009) (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)); *see also Warren*, 593 F.3d at 546.

In light of this standard, as well as the evidence presented at trial, defendant's motion must be denied. Specifically, the evidence at trial established that defendant's use of force against Victim A was unreasonable under the Fourth Amendment, in violation of Title 18, United States Code, Section 242. First, the video recording of defendant's encounter with Victim A proved that defendant viciously punched and kicked Victim A. The video depicts that defendant's acts were plainly intentional and directed at Victim A. The video depicts that Victim A did not physically resist or threaten the defendant and that defendant continued to use force on Victim A, even as Victim A laid face-down, on the ground, in handcuffs. Moreover, the video depicts that Victim A was cooperative and responsive to the officers' commands, including (1) when Victim A was handcuffed and later un-

3

handcuffed, (2) when Victim A unbuttoned his pants and lifted his shirt, (3) when Victim A handed the defendant a baggie of marijuana, and (4) when Victim A lied down on the ground, took off his earrings, and turned face-down onto the ground. The video recording, in itself, supports the jury's finding.

In addition, the government presented the testimony of Victim A and other bystanders. The testimony of these witnesses was consistent with the video recording and established that Victim A did not resist arrest or threaten the defendant in any manner would warrant the force used by defendant. In addition, the police reports prepared by the defendant describing his use of force on Victim A also corroborate that defendant knew that his use of force had been unreasonable and he tried to cover-up his use of force. Moreover, one of the store employees testified that defendant later returned to the store looking for the video recording of the incident.

The government also presented evidence of defendant's specific training on the use of force and report writing. Two instructors from the CPD Academy testified that at the time that defendant was training, the curriculum included training on the Fourth Amendment and limits on the use of force. Although the witnesses did not testify regarding the legal standards under the Fourth Amendment, they did specifically testify that this was part of the training curriculum at the time that defendant attended the academy. Moreover, TFO Tim Moore testified regarding CPD training records for defendant, which showed that

4

CPD officers at roll call were shown training videos regarding the Fourth Amendment and use of force.

Accordingly, there is ample evidence to support the jury's verdict, in particular when viewed in the light most favorable to the government, that defendant acted intentionally and that he knew his use of force was a violation of a Constitutional right.

### III.   Motion for New Trial

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Motions for new trials in criminal cases are addressed to the sound discretion of the trial court. However, it is well settled that such motions are not favored and should be granted sparingly, with great caution and only in exceptional circumstances. *See, e.g., United States ex rel. Darcy v. Handy*, 351 U.S. 454 (1956). The court should be mindful that the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990)). To prevail on a motion for a new trial, a defendant must demonstrate that substantial prejudice occurred during the trial, resulting in a gross miscarriage of justice. The burden upon a defendant to establish the existence of prejudicial error is a heavy one, not satisfied by unsupported conclusory allegations or speculation. *Darcy*, 351 U.S. at 462.

The Seventh Circuit has interpreted the "interest of justice" standard to require a new trial only in situations in which "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Further:

> The court may not re-weigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable . . . The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand . . . .

*Reed*, 875 F.2d at 113. None of defendant's claims meets this legal standard.

### a. The Court's Did Not Err In Excluding the Testimony of John Farrell

With no supporting legal authority, defendant argues that he was denied a fair trial because the Court excluded Mr. Farrell's testimony. As best can be discerned, defendant takes issue with the bases of the Court's rulings, the timeliness of those rulings, and the Court's separate rulings regarding some of the government's fact witnesses. None of these arguments have any merit and the motion should be denied.

On October 15, 2015, the Court granted the government's motion to exclude the testimony of John Farrell on multiple grounds. (Doc. #75) The government had moved to bar the testimony of Mr. Farrell on several grounds in both its *Daubert* motion and subsequent motions *in limine*. (Doc. #53, 61) In its order, this Court barred the testimony of Mr. Farrell pursuant to Rules 702, 704(b) and 403.

Defendant's motion should be denied because the Court properly exercised its gatekeeping obligations pursuant to *Daubert*. In *Daubert v. Merrell Dow*

6

*Pharmaceuticals, Inc.,* 509 U.S. 576 (1993), the Supreme Court held that scientific expert testimony is admissible only if it is both relevant and reliable, and held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' or 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Rule 702 "requires a valid connection to the pertinent inquiry as a precondition to admissibility," and "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial court must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592. If the proffered testimony fails the general test of relevance under Rule 402, meaning that it does not assist the trier of fact in understanding a fact in issue, then the district court should reject the proffer. *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996).

An expert's testimony must also be based on the expert's special skills. "Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Fed. R. Evid. 403." *Hall*, 93 F.3d at 1343; *see United States v. Lundy*, 809 F.2d 392, 396 (7th Cir. 1987) ("District courts must ensure that expert opinion testimony is in fact expert opinion, not merely an opinion given by an

7

expert."); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("Experts' opinions are worthless without data and reasons" and "[t]he court is not obligated to admit testimony just because it is given by an expert."). "Courts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend." *Lundy*, 809 F.2d at 395.

The Court correctly applied Federal Rules of Evidence 702 and 704(b) in excluding Mr. Farrell's expert testimony. As explained in the Court's order, Mr. Farrell's proffered testimony was "essentially channeling the exculpatory testimony of the Defendant" (Doc. #75 at 2), for the purpose of opining on defendant's state of mind at the time that he used force on Victim A, *i.e.* that defendant used force because he believed Victim A posed a threat to him. (Id. at 2-3) This is plainly prohibited under Rule 704(b). *See United States v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014); *United States v. Reese*, 666 F.3d 1007, 1019 (7th Cir. 2012). Furthermore, Mr. Farrell's opinion – that defendant did not use excessive force – was unreliable in light of the fact that Mr. Farrell largely relied on defendant's self-serving statements, instead of any other statements by other witnesses present at the scene, as the basis for his opinion. Mr. Farrell's decision to cherry-pick the data and information he relied upon discredited his own opinion and rendered it unreliable. Expert witnesses, like Mr. Farrell, who cherry-pick data are unreliable and do not "assist the trier of fact." Fed. R. Evid. 702, *see Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) ("Because in formulating his opinion [the doctor] cherry-picked the facts he considered to render an expert opinion, the

8

district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to assist the trier of fact." (internal citation and quotation marks omitted)).

Similarly, the Court properly excluded Mr. Farrell's testimony pursuant to Rule 403 and *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). (Doc. 75 at 3.) In *Thompson*, the Court held that "the jury, after having heard all of the evidence presented, was in as good a position as the expert to judge whether the force used by the officers . . . was objectively reasonable given the circumstances in this case." *Id*. For this reason, the Seventh Circuit affirmed the exclusion of two experts on use of force pursuant to Rule 403, because the expert testimony "would have induced the jurors to substitute their own independent conclusions for that of the experts." *Id*. In *Thompson*, the Seventh Circuit also held that CPD's General Orders regarding use of force "shed no light on what may or may not be considered 'objectively unreasonable' under the Fourth Amendment" and were inadmissible pursuant to Rule 401. *Id*. at 453-55. This Court correctly excluded Mr. Farrell's testimony on the same grounds. (Doc. #75 at 3-4.)

Defendant fails to present any law or facts that are inconsistent with the Court's application of Rules 702, 704(b) and 403; instead, defendant quibbles with the timing and nature of the Court's ruling on motions *in limine*. At the outset, it should be noted that defendant never raised any issue regarding the timing of the Court's order until after the verdict was rendered in this case. At no time during the pre-trial conference or during the trial itself, did defendant seek to continue the

9

proceedings in light of this Court's specific ruling. Moreover, the Court detailed its reasoning and bases for excluding Mr. Farrell's testimony, which are plainly consistent with the law of this Circuit. Defendant also seems to argue that the Court's rulings somehow exceeded the scope of the motions filed by the government. Not only is defendant's argument inconsistent with the parties' filings and the Court's order, but it is inapposite to the question of admissibility under the Rules of Evidence, which bind the Court.

Finally, defendant argues that the testimony of fact witnesses Andrea Hyfantis and Yolanda Hatch, regarding the training curriculum in place at the CPD Academy at the time of defendant's training, somehow opened the door for Mr. Farrell's opinions. Defendant mischaracterizes the substance of these witnesses' testimony in support of his argument. These witnesses did not testify regarding the use of force manual or the standard for reasonableness under Fourth Amendment, and did not offer any opinions regarding the reasonableness of defendant's use of force. Instead, they each testified regarding specific types of training given to recruits at the time that defendant attended the CPD Academy, regarding documenting the use of force. This is in sharp contrast to Mr. Farrell's proffered testimony.

### b. The Court Did Not Err in Denying Defendant's Motion for Bill of Particulars.

To prevail on a motion for a new trial under Rule 33, a defendant must demonstrate that substantial prejudice occurred during the trial, resulting in a gross miscarriage of justice. The burden upon a defendant to establish the existence

of prejudicial error is a heavy one, not satisfied by unsupported conclusory allegations or speculation. *Darcy*, 351 U.S. at 462.

In an unsupported and conclusory manner, defendant claims that he was prejudiced during the trial – resulting in a gross miscarriage of justice – as a result of this Court's denial of the motion for a bill particulars. Once again, defendant never raised this issue during the trial itself and was able to present his defense against the charges in the indictment. Defendant appears to, essentially, ask this Court to reconsider its prior ruling without providing any legal support or identifying any specific prejudice at trial.

Moreover, the Court's ruling is consistent with the law. The Seventh Circuit has made clear that a bill of particulars is unnecessary "if the information the defendant seeks is readily available through alternate means such as discovery." *United States v. Vaughn*, 722 F.3d 918, 927-28 (7th Cir. 2013) (citing *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008); *United States v. Redd*, 167 Fed.Appx. 565, 568 (7th Cir.2006)). Further, the law is well established that a bill of particulars is unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense and to assert double jeopardy. *Vaughn*, 722 F.3d at 927. Based on the discovery provided to defendant as well as the language of the speaking indictment, defendant had ample notice of the charges as well as the evidence against him. Accordingly, the motion should be denied.

### c. Defendant Was Not Denied Access to Counsel by the Court.

This Court did not deny defendant access to counsel during the trial. Instead, the Court instructed defendant not to discuss his ongoing testimony and, in the event that defendant misunderstood the Court's admonishment, provided additional time for defendant to confer with his lawyer. Contrary to defendant's argument, this is not structural error.

In *Perry v. Leeke*, the Supreme Court ruled that a state trial court's order forbidding the defendant from conferring with his lawyer at all during a 15 minute afternoon recess between direct examination and cross examination did not violate the defendant's Sixth Amendment right to assistance of counsel. *Leeke*, 488 U.S. at 283–84. The Court held that "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying." *Id*. at 281–82. The Court also noted that "the judge may permit consultation between counsel and defendant during such a recess, but forbid discussion of ongoing testimony." *Id*. at 284 n. 8.

In this case, the Court appropriately followed the law as laid out by the Supreme Court. The Court allowed contact between the defendant and his counsel, but simply forbade discussion between lawyer and client about ongoing testimony. During the evening recess on October 21, 2015, the Court contacted the parties and informed defense counsel that they could speak with their client and advise him that evening as well as the following morning. Doc # 87. The following morning, the Court postponed defendant's cross-examination and closing arguments for

12

approximately 90 minutes to allow additional time for defense counsel and defendant to confer. When the matter resumed later that morning, defense counsel neither objected to the proceedings resuming nor asked for additional time to confer before cross-examination began, which the Court previously indicated counsel could ask for, if necessary.

Defendant cites *Washington v. Recuenco*, 548 U.S. 212 (2006) in support of his argument. *Recuenco* does not hold that denial of counsel in these circumstances in structural error. Instead, in *Recuenco*, the Supreme Court stated:

> We have repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, "'most constitutional errors can be harmless.'" *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). "'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" 527 U.S., at 8, 119 S.Ct. 1827 (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, supra, at 9, 119 S.Ct. 1827 (emphasis deleted).

More recently in *United States v. Gaya*, 647 F.3d 634 (7th Cir. 2011), the Seventh Circuit discussed structural error in this very context, noting that"[t]he analysis … focuses on the impact of the interruption on the ability of the defendant's lawyer to represent his client," regardless of whether the interruption had any likelihood of changing the outcome. *Id*. at 639. In *Gaya*, defendant claimed on appeal that the district court improperly forbade counsel from discussing certain matters during an overnight recess, including impeaching telephone records which

13

were the subject of the impending cross-examination.  The Court suggested that to assess structural error, it would need to determine whether the discussions the lawyer "might have had with his client during the overnight recess at which he claims to have been enjoined to silence could have altered [defendant's] responses when cross-examination resumed the next day, or in other words whether the answers he gave then might have been different had he discussed with his lawyer the forthcoming cross-examination during the overnight recess." *Id*. at 639-40.

Here, the Court need not speculate as to whether defendant's answers on cross-examination would have been different:  before the trial resumed for the day on October 22, the Court delayed the proceedings, giving defendant and defense counsel an uninterrupted opportunity to discuss matters in preparation for cross-examination.  When the trial was set to resume, defense counsel did not request additional time, which the Court stated he could do if needed.  Under similar facts in *Gaya*, the Court concluded that there was no reversible error when counsel "evinced no desire for any additional time for conferring with his client before the trial resumed." *Id*. at 641 (after district court barred impeachment with the phone records on cross-examination, fact that defense counsel agreed that cross-examination could proceed meant that there was no reversible error).  In light of this analysis, there was no error.

### d. There is No Cumulative Error

As set forth above, defendant has failed to meet his burden under Rules 29 and 33 and the Court did not commit any error as argued by defendant. In the alternative, even assuming defendant is correct that the Court erred during trial, any evidentiary error standing alone or taken together was harmless. Over the course of the trial, the jury heard substantial evidence to support the government's theory of prosecution. *See United States v. Cueto*, 151 F.3d 620, 637-38 (7th Cir. 1998). Defendant, therefore, is not entitled to a new trial under Federal Rule of Criminal Procedure 33.

## IV. Conclusion

For these reasons, defendant's post-trial motions should be denied.

                                      Respectfully submitted,

                                      ZACHARY T. FARDON
                                      United States Attorney

By:   /s/ *Jessica Romero*
        JESSICA ROMERO
        LINDSAY JENKINS
        Assistant U.S. Attorneys
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 353-5300

January 7, 2016