IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 14 CR 674 |
| ALDO BROWN, ) | Judge Virginia M. Kendall |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

A grand jury returned a three count indictment against Defendant Aldo Brown on November 18, 2014, charging him with unreasonable use of force against Jecque Howard in violation of 18 U.S.C. § 242 (Count One) and two counts of making false statements in police reports with the intent to impede a federal investigation under 18 U.S.C. §§ 242, 1519 (Counts Two and Three). (Dkt. No. 1.) The charges stem from an incident at a convenience store on September 27, 2012 in which Brown punched and kicked Howard and later his description of the incident as reported in his tactical response report and arrest report. *Id.* On October 23, 2015, a jury found Brown guilty of Count One and not guilty of Counts Two and Three. (Dkt. No. 96.) Brown moves for judgment of acquittal under Fed. R. Crim. P. 29(c) arguing that there was insufficient evidence establishing that he intended to deprive Howard of a constitutionally protected right. (Dkt. No. 100 at 3.) Alternatively, Brown requests a new trial under Fed. R. Crim. P. 33, claiming that the Court erred by: (1) barring the expert testimony of John Farrell; (2) denying Brown's motion for a bill of particulars; and (3) denying Brown's access to counsel after his direct examination and before cross examination the following day. *Id.* at 4-11. The

1

Court denies Brown's motions because there was more than sufficient evidence to support f the jury's verdict and the Court's rulings were supported by the the facts and law.

**I       The Record Reflects Ample Evidence to Preserve the Jury's Guilty Verdict**

Brown asserts that he is entitled to a judgment of acquittal because the evidence presented to the jury was insufficient to sustain his conviction. Fed. R. Crim. P. 29. Brown faces "a nearly insurmountable hurdle" in claiming that the jury had insufficient evidence to conclude that he acted with the intent to deprive Howard of constitutional rights when he assaulted him. *See e.g. United States v. Domnenko*, 763 F.3d 768, 772 (7th Cir. 2014) (citing *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). Once the Defendant is convicted, the Court reviews the evidence presented to the jury in the light most favorable to the Government and makes all reasonable inferences in the Government's favor. *See United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) (citing *United States v. Larkins*, 83 F.3d 162, 165 (7th Cir. 1996)). The Court may overturn the jury's guilty verdict only if upon viewing the evidence in the light most favorable to the Government, "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *United States v. Stevenson*, 680 F.3d 854, 855-56 (7th Cir. 2012)).

In order to prevail on Count One, the Government had to prove beyond a reasonable doubt that: (1) Brown was acting under color of law; (2) Brown deprived Howard of his right to be free from the use of unreasonable force that is secured and protected by the Constitution; (3) Brown intended to deprive Howard of these rights; and (4) Howard was present in Illinois. See 18 U.S.C. § 242; *United States v. Bradley*, 196 F.3d 762, 767 (7th Cir. 1999) ("Section 242 makes it criminal to (1) willfully and (2) under color of law (3) deprive a person of rights

protected by the Constitution or laws of the United States."). Brown asserts that the Government failed to establish the third element requiring that he intended to deprive Howard of a constitutional right; rather, he claims the jury was "forced to guess" on whether this element was proven.

In truth, there was more than sufficient evidence to satisfy the intent requirement presented to the jury to support the jury's finding that Brown intentionally assaulted and battered Howard with the intent to violate his constitutional rights. "Willfulness under § 242 essentially requires that the defendant intend to commit the unconstitutional act without necessarily intending to do that act for the specific purpose of depriving another of a constitutional right. In other words, to act 'willfully' in the § 242 sense, the defendant must intend to commit an act that results in the deprivation of an established constitutional right as a reasonable person would have understood that right." *Bradley*, 196 F.3d at 770. It was perfectly reasonable for the jury to determine that when Brown punched and kicked Howard when Howard was not acting aggressively toward him that he intended to commit an act that resulted in the violation of the established constitutional right to be free from unreasonable use of force as a reasonable person would have understand that right.

The jury observed powerful evidence demonstrating Brown's intentionally violated Howard's constitutional rights when they viewed the video recording of the incident. The video depicted Brown and his partner, Officer Stacker, enter the convenience store in plain clothes. Immediately, and for no apparent reason, Howard and Brown handcuff all of the men in the store together. Notably, not one of the men is resisting the officers or challenging them as they cuff them to each other in a chain. Brown and Stacker then search the store while Howard and the others stand still, casually chatting, and pose no threat to either officer. Stacker then removed

3

Howard from the handcuffs and although Howard remained passive as observed in the video, with his arms at his side, Brown approached him and told him to lift his shirt. The video shows that Howard complied with the direction and lifted up his shirt to reveal his waistband. Howard then unbuckled his belt and lowered his pants at the direction of Brown. Howard had complied with Brown's orders up to this point and is standing still, posing no danger to Brown or Stacker. According to his testimony, Brown then saw a gun in Howard's back pocket which triggered Brown to aggressively attack Howard. In viewing the evidence in the light most favorable to the Government, it was reasonable for the jury to find that Brown did not see a gun in Howard's back pocket because Howard's pants were pulled down and his back pocket was not visible to Brown. Brown punched Howard in the face and wrestled him to the ground --a clearly intentional act that a reasonable jury would interpret as a violation of Howard's constitution right to be free from unreasonable use of force. Howard staggered away from the punch and then Brown grabbed him by the neck, and pushed him against a refrigerator. Although Brown testified that Howard gave Brown bags of marijuana that were in his pocket after Brown told him to hand them over and that Howard then sought to wrestle his gun from him. The jury could reasonably have discredited this testimony since Howard is not depicted in the video as showing signs of resistance or threatening behavior. Brown then punched Howard in the ribs. Brown then pushed Howard to the ground and Howard complied with another order from Brown by taking off his earrings and giving them to Brown. At this point, the jury observed the video where Howard is ordered to lie on his stomach and is handcuffed again, thereby posing even less of a threat to Brown. Once Howard is subdued and lying on the ground, Brown struck Howard again in the face. Brown then searched Howard while he is on the ground and at this point recovered a

gun from his back pocket. After Brown has disarmed, and a jury could reasonably infer, due to the fact that Howard had the gun, Brown kicked him.

In addition, two Government witnesses testified about how the Chicago Police Department trains its officers in the CPD Academy on the Fourth Amendment and the limits on the use of force. They proffered that CPD officers at the time Brown attended the CPD Academy were trained on these subjects. Another Government witness testified that according to CPD records, Brown viewed training videos on the use of force. Making all reasonable inferences in the Government's favor, a reasonable jury could find beyond a reasonable doubt that upon viewing the video of the altercation, hearing Howard's testimony, and learning of Brown's training on the Fourth Amendment and use of force, when Brown punched and kicked Howard he intended to deprive Howard of his right to be free from unreasonable use of force. The Court accordingly denies Brown's motion for judgment of acquittal.

## II. The Court Did Not Err Such that a New Trial is Necessary

Rule 33(a) of the Federal Rules of Criminal Procedure states that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *See also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012) (reviewing a district court's order on a Rule 33 motion for abuse of discretion). "A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006); *see also United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004) ("'[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'") (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.

5

1989))), *overruled on other grounds*, 546 U.S. 12 (2005). But a jury verdict in a criminal case is not to be overturned lightly, therefore a Rule 33 motion will not be granted lightly. *See United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994). None of Brown's arguments warrant a new trial because the Court committed no error.

### A. John Farrell's Expert Testimony

Brown moves for a new trial on the basis that the Court erred in barring John Farrell from testifying as an expert. He argues that the Court's ruling was not based on arguments presented by the Government and the Court allowed a Government witness to testify who mirrored the reasoning of Farrell's expert testimony. Brown raised the latter argument in its motion to reconsider the Court's ruling barring Farrell as an expert witness, which the Court denied. According to Farrell's expert report, he would have testified that in light of his police experience, after reviewing the video, the case and tactical response reports completed by the Brown and Stacker, and an interview of Brown that Farrell conducted, Brown did not use excessive force when arresting Howard. As an initial matter, the Court's pretrial opinion barring Farrell did not rest on arguments not advanced by the Government. The Government argued that Farrell should be barred in both a pretrial motion and in a motion in limine. (Dkt. Nos. 53, 61.) The Court excluded Farrell's expert testimony for two reasons: first, it violated Rule 704(b) of the Federal Rules of Evidence because it would admit "highly selective and favorable statements [by Brown] before the jury without having to face cross-examination" as Farrell would have testified about Brown's version of events without allowing the Government to cross examine Brown on those statements. *United States v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014). Second, the Court barred Farrell's expert testimony under Rule 403 because it had little probative value considering that the definition of reasonableness under the Fourth Amendment is a fact intensive inquiry that

is within the ken of the jury. *See Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006). Further, Farrell's testimony had a substantial risk of prejudice because it "would have induced the jurors to substitute their own independent conclusions for that of the expert." *Id.* The Government asserted both of these arguments not only in its first motion to bar Farrell, but also in a motion in limine. (Dkt. No. 53 at 6-7; Dkt. No. 61 at 14-17.)

The Court has broad discretion in its role as gatekeeper under Rule 702 to determine the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("We are confident that federal judges possess the capacity to undertake this review. Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test."). The Court properly barred Farrell's expert testimony under Rules 704(b) and 403. Rule 704(b) forbids experts from explaining whether the defendant had the requisite state of mind to commit the offense, which in this case was the intent to violate Howard's constitutional rights by using excessive force. *See Beavers*, 756 F.3d at 1054-55. Farrell's expert testimony would have relied heavily on Brown's exculpatory statements about his state of mind about which the Government would not have been able to cross examine Brown. *See id.* This would have allowed Brown to impermissibly "circumven[t] the rules of evidence" by using Farrell as a conduit for Brown's testimony. *Matter of James Wilson Assoc.*, 965 F.2d 160, 172 (7th Cir. 1992). The Court therefore properly excluded Farrell's expert testimony under Rule 704(b).

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by…unfair prejudice[.]" As the Court correctly held in its order, Farrell's expert testimony would have offered almost no probative value because police practices are "completely immaterial as to the question of whether a violation of the federal constitution has been established" and Farrell would have testified that Brown complied CPD policy when he

used force in arresting Howard. *Thompson*, 472 F.3d at 454; *see also*, Dkt. No. 58, Ex. 1 at 12 ("My opinion, based on my review of this incident, is that Police Officer Aldo Brown acted in compliance with the Chicago Police Department Policy relative to the use of force."). His testimony would have resulted in significant prejudice because hearing from an expert on CPD policies about use of force "would have induced the jurors to substitute their own independent conclusions for that of the expert." *Thompson*, 472 F.3d at 458. This is overly prejudicial because the jury was "in as good a position as the experts to judge whether the force used by [Brown] to subdue [Howard] was objectively reasonable." *Id.* Because the slight probative value of Farrell's expert testimony substantially outweighed its unfair prejudice, the Court appropriately excluded it under Rule 403 in addition to Rule 704(b).

Brown argues that the Court ruled inconsistently when it excluded Farrell's expert testimony but allowed Government witnesses Andrea Hyfantis and Yolanda Hatch to testify. Hyfantis is an attorney who works for the CPD in the Education and Training Division. She testified to the fact that since June 1995, she has trained CPD recruits on the legal issues surrounding the use of force and on how to properly fill out reports. She also testified to the general topics covered in those training sessions. Specifically, Hyfantis stated that she trains recruits on the text of the Fourth Amendment that is applied to officers' use of force against citizens, the case law regarding the Fourth Amendment, and justifications for the use of force. Hyfantis stated that in 2002 and 2003, these Fourth Amendment principles were taught to recruits in the CPD academy; these are the years that Brown would have been in the CPD academy. In accordance with the Court's order, Hyfantis did not testify about whether Brown used reasonable force against Howard or name any CPD policies about when an officer is justified in using force. Hyfantis's testimony stands in contrast to Farrell who would have

described CPD policies on use of force, applied those policies to Brown's assault of Howard, and opined that Brown complied with CPD policies on use of force. Hatch is a Chicago Police Officer who also works in the CPD's Education and Training Division. She testified about how she trains CPD recruits on case reporting and the topics covered in that training. Neither Hyfantis nor Hatch testified about whether Brown made false statements in the reports.

In response to Brown's argument that Hyfantis and Hatch should have been barred from testifying because they did not personally train Brown, as the Court noted in its order, Brown was free to cross examine them on this fact. Brown, however, failed to cross examine either on this issue. In sum, the Court properly allowed Hyfantis and Hatch to testify about CPD training because they identified topics that recruits are trained on without usurping the role of the jury by opining on whether Brown used excessive force or made false statements in reports and without inducing the jury to adopt CPD policies on when it is reasonable to use force. Therefore, the Court's rulings on the admissibility of testimony by Farrell, Hyfantis, and Hatch exhibit no inconsistencies but rather are in supported by the law.[1]

### B. Bill of Particulars

Brown reasserts the argument presented in his motion for a bill of particulars and claims that the Court erred in denying it. In that motion, Brown requested the following in a bill of particulars:

1. A precise description and specific identification of the "punching and kicking" the Government refers to in the indictment (Count One)
2. A precise description of the "bodily injury" alleged to have occurred to Victim A. (Count One)
3. Specify what statements are "false". (Count Three)

---

[1] Brown objects—without citing to law—to how the Court issued its order barring Farrell's expert testimony on the day before trial began. Brown fails to explain how the timing of the Court's order created "a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *Van Eyl*, 468 F.3d at 436.

9

(Dkt. No. 29 at 1.) If an indictment "includes each of the elements of the charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the applicable statute or statues is sufficient to notify [the defendant] of what the government intended to prove," a bill of particulars is unnecessary. *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013). Adequate discovery can "satisfy the need for a bill of particulars." *Id.* at 928. Determining whether to grant a motion for a bill of particulars is a discretionary decision vested in the district court. *See United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008) ("We review the trial court's discretionary decision to deny a motion for a bill of particulars deferentially, reversing only upon an abuse of that discretion."). As the Court correctly found in its order denying Brown's motion for a bill of particulars, the indictment went beyond the minimum needed to ensure that Brown was on notice of what the Government intended to prove. It not only named the elements of the charged statutes, the time and place of the conduct, and the statutes themselves, but also went into detail describing the conduct. The indictment charged with respect to Count One that on or about September 27, 2012, Brown and another officer entered a convenience store on East 76h Street in Chicago and handcuffed Victim A. (Dkt. No. 1 at ¶1.) The other officer removed the handcuffs from Victim A and Brown struck Victim A multiple times. *Id.* While Victim A was on the ground Brown recovered a firearm from Victim A's pocket and then kicked him. *Id.* Brown's own motion tracked this chain of events, demonstrating that he clearly had sufficient notice of the charges against him. (Dkt. No. 29 at 1-2). For Count Three, the indictment described three specific alleged falsehoods. Furthermore, the Government provided Brown ample discovery that included the video of the altercation. Accordingly, the Court did not err in in holding that the indictment gave even more information

than necessary to ensure that Brown knew the nature of the charges against him and was able to prepare a defense.

C.     **Access to Counsel**

Lastly, Brown argues that he deserves a new trial because he was denied access to counsel after the Defense's direct examination of him and before cross examination the following day. Brown points to the Court's order after direct examination that he should not discuss his testimony with his lawyers before cross examination began. To determine whether an interruption in the opportunity for lawyer-client communication constituted an error warranting a new trial, the Court asks "whether the answers [the defendant] gave…might have been different had he discussed with his lawyer the forthcoming cross-examination…during the overnight recess." *United States v. Gaya*, 647 F.3d 634, 639-40 (7th Cir. 2011) (citation omitted). As Brown's motion acknowledges, the Court issued an order within a matter of hours in the evening on October 21, 2015 during the recess after the direct examination of Brown and before Court reconvened the next morning for cross examination that stated:

> Over three hours after the close of court, the Government informed the Court that they would be raising this issue at the morning motion call because the case of *United States v. Santos*, 201 F.3d 953, 965 (7th Cir. 2000) called into question this practice. The Court has reviewed the case and agrees that the Court's direction could have been misinterpreted and possibly could have been interpreted to interfere with Defendant's right to confer with his lawyers in violation of his Sixth Amendment rights. *See Perry v. Leeke*, 488 U.S. 272, 284−85 (1989). To the extent the Defendant or defense counsel misconstrued the Court's instruction in such a manner, the Court informs Defense Counsel that they may speak with their client and advise him this evening as well as in the morning. The Court will provide Defense Counsel with additional time in the morning to confer with his client if requested. The Court's staff will call Defense counsel and convey this order immediately and will also provide counsel adequate time in the morning to speak and confer prior to the continuation of the trial if requested.

(Dkt. No. 87.) The Court also called the parties that evening and read this order over the phone. The next morning before the cross examination of Brown, the Court reiterated this order and

11

offered Brown the opportunity to break the trial and speak with his attorney. Brown accepted the Court's offer and the Court provided him roughly 90 minutes (the amount of time Brown requested) to confer with his counsel in order to ensure that he was not denied access to counsel. Trial then resumed after Brown met with his attorneys for the amount of time that he had requested. Brown did not request additional time to talk to his attorneys. In light of the fact that the Court promptly cleared up the confusion about whether Brown could speak with his attorney during the recess by issuing an order, explained that order again when court resumed, and—most importantly—provided Brown all the time he asked for to confer with counsel before cross examination, there is no question that Brown's answers on cross examination would not have differed had he talked with counsel after direct examination and before the issuance of the order. As a result, no error occurred and the Court denies Brown's motion for a new trial due to denial of access to counsel.

## CONCLUSION

For the reasons stated therein, the Court denies Brown's motion for judgment of acquittal and a new trial.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 3/2/2016