1    IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3    UNITED STATES OF AMERICA,        )  Docket No. 14 CR 674-1
                                      )
4              Plaintiff,             )  Chicago, Illinois
                                      )  October 22, 2015
5         v.                          )  1:35 p.m.
                                      )
6    ALDO BROWN,                      )
                                      )
7              Defendant.             )

8                     CLOSING ARGUMENTS
          EXCERPT TRANSCRIPT OF PROCEEDINGS - JURY TRIAL
9            BEFORE THE HONORABLE VIRGINIA M. KENDALL


10
     APPEARANCES:
11
     For the Government:      UNITED STATES ATTORNEY'S OFFICE by
12                            MS. LINDSAY JENKINS
                              MS. JESSICA ROMERO
13                            Assistant United States Attorneys
                              219 South Dearborn Street
14                            5th Floor
                              Chicago, Illinois 60604
15
     For the Defendant:      LAW OFFICES OF DANIEL Q. HERBERT by
16                            MR. DANIEL Q. HERBERT
                              206 South Jefferson, Suite 100
17                            Chicago, Illinois  60661

18                            J. RUSSELL LAW LLC by
                              MS. JENNIFER W. RUSSELL
19                            206 South Jefferson, Suite 100
                              Chicago, Illinois  60661
20
     Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
21                            Federal Official Court Reporter
                              219 South Dearborn, Room 2318-A
22                            Chicago, Illinois 60604
                              (312) 435-6047
23                            Gayle_McGuigan@ilnd.uscourts.gov

24   (NOTE:  THIS IS AN EXCERPT OF PROCEEDINGS.  PAGE NUMBERING WILL
     NOT CORRESPOND TO ANY COMPLETE TRIAL TRANSCRIPT THAT MAY BE
25   PREPARED.)

Closing Argument - Ms. Jenkins

1           *    *    *    *    *

2      (In open court in the presence of the jury:)

3           THE COURT:  Okay.  Folks, please be seated and get

4      comfortable.

5           We are now going to proceed to the closing arguments

6      by both of the parties.

7           The way it works is that the government goes first.

8      It has the burden of proof.  The defense responds.  And then

9      the government has a rebuttal argument.

10          These are arguments.  These are not evidence.  These

11     are what the lawyers believe are the reasonable inferences you

12     can make from the evidence that you heard over the past week.

13          So let's begin.  And I'll recognize Ms. Jenkins from

14     the United States.

15          MS. JENKINS:  Thank you.

16     CLOSING ARGUMENT BY MS. JENKINS:

17          MS. JENKINS:  Counsel.

18          Police officers have tremendous power in this nation.

19     Some of that power comes from their ability to detain people,

20     to search people, to arrest people.  But with that power comes

21     tremendous responsibility, responsibility to exercise their

22     power carefully, to act fairly and reasonably, to use only the

23     amount of force necessary to control a situation.

24          Being a police officer is undoubtedly a very difficult

25     job.  And it is a noble profession.  But there is a right way

Closing Argument - Ms. Jenkins

1    to do that job, and there is a wrong way to do that job.

2    On September 27th of 2012, the defendant Aldo Brown

3    did his job the wrong way.  He and his partner went into the

4    Omar and Salma Convenience Store on Chicago's south side.  They

5    handcuffed several people in the store, and they searched those

6    people, and they searched the store.

7    The defendant had an encounter with Jecque Howard.

8    And the defendant punched Jecque Howard in the face.  And the

9    defendant punched Howard in the face again.  And again.  And he

10   choked him.  And the defendant put Howard on the floor in the

11   back of the store.  He handcuffed him.  He disarmed him.  And

12   he kicked him in the stomach.

13   That, Ladies and Gentlemen, is a federal crime.  It is

14   the use of unreasonable force under color of law.

15   And you now know that the defendant did something else

16   when that incident was over.  He prepared two reports:  An

17   arrest report, a tactical response report.

18   The defendant put false information in those reports

19   to cover up what he did in the store, his unreasonable use of

20   force.  That, too, is a federal crime.  It is obstruction.

21   I'd like to take about 30 minutes and talk with you

22   about the charges in this case, the allegations against the

23   defendant, and the instructions that I expect the Court will

24   give you on the elements of the crimes that the defendant is

25   charged with and talk with you about how the evidence that

Closing Argument - Ms. Jenkins

1    you've seen and heard over the past two days proves the

2    defendant's guilt on each and every count beyond a reasonable

3    doubt.

4           Count One charges the defendant with the use of

5    unreasonable force.

6           I expect that Her Honor will instruct you that in

7    order to find the defendant guilty of Count One for the use of

8    unreasonable force, the government must prove four elements:

9           First, that the defendant was acting under color of

10   law;

11          Second, that the defendant deprived Jecque Howard of

12   his right to be free from the use of unreasonable force by a

13   person acting under color of law as secured by the Constitution

14   of the United States;

15          Third, that the defendant intended to deprive Howard

16   of this right;

17          And, finally, that Howard was present in Illinois.

18          Now, I'd like for you to think of this list of four

19   elements as a checklist.

20          It is the government's burden to prove each of these

21   elements beyond a reasonable doubt.

22          If you find that the government has proved each of

23   these elements, check it off the list.  And if you find, as you

24   should, that the government has proven all four elements, then

25   you must convict the defendant of Count One.

Closing Argument - Ms. Jenkins

1    I'd like to talk about these elements and break them
2    down for you as I expect the judge will instruct you and talk
3    with you about the testimony that helps to prove these
4    evidence -- these elements, excuse me, beyond a reasonable
5    doubt.
6    Now, I'd like to take them out of order and start with
7    the last element first because it's the easiest one to take
8    care of.
9    First -- excuse me, fourth, that Jecque Howard was
10   present in Illinois.
11   There's really no dispute, Ladies and Gentlemen, that
12   the Omar and Salma Convenience Store that you've heard so much
13   about over the past two days is located in Chicago, Illinois,
14   and that Mr. Howard was present inside that store in the City
15   of Chicago in the State of Illinois at the time of the
16   incident.
17   Element four, satisfied beyond a reasonable doubt.
18   Element number one:  That the defendant was acting
19   under color of law.
20   Now, under color of law is not a phrase that you hear
21   every day, and so I expect that the judge would instruct you
22   that a person acts under color of law when he acts in his
23   official capacity or purports to -- or purports or claims to
24   act in his official capacity.
25   I also expect that the judge will instruct you that

Closing Argument - Ms. Jenkins

1   actions under color of law include the abuse or misuse of

2   power.

3          Now, there's really no debate, or at least the parties

4   have reached a stipulation, you heard that, Stipulation Number

5   One, that on September 27th of 2012, the defendant was acting

6   in his capacity as a police officer.  That's what that first

7   element is referring to, that the defendant was acting as a

8   police officer on the day in question.  Element number one.

9          Let's move to element number two:  That the defendant

10  deprived Howard of his right to be free from unreasonable

11  force, and that that right is secured or protected by the

12  Constitution and laws of the United States.

13         That's a mouthful, and I expect the judge will give

14  you a few more instructions to help you understand that.

15         I expect the judge will instruct you that the right to

16  be free from unreasonable force by a law enforcement officer is

17  a right secured by the Constitution and laws of the

18  United States.  Every person has the right to be free from

19  unreasonable force from police officers.  Every person.  That

20  includes Jecque Howard.

21         So how do we figure out whether or not the defendant

22  used unreasonable force on that day?

23         You can break this down into a couple of components.

24         First, was it the defendant?

25         It is government's burden to prove that the defendant

Closing Argument - Ms. Jenkins

1  is the person who committed the crimes that he is charged with.

2  And you've heard an abundant amount of testimony that it was

3  the defendant who you saw in the video who was at the store

4  that day who had the encounter with Mr. Howard.  There is

5  really not a whole lot of doubt at all about the fact that it

6  was the defendant who performed the acts we're talking about.

7          Second question:  Did the defendant use force?

8          Well, yes, the defendant made physical contact with

9  Mr. Howard.  That's the use of force.

10          The question is whether or not that force was

11  unreasonable.

12          I expect that the judge will instruct you that in

13  performing his job, a police officer can use force that is

14  reasonably necessary under the circumstances.  Reasonably

15  necessary.

16          You must decide whether the defendant's force was

17  unreasonable from the perspective of a reasonable officer

18  facing the same circumstances the defendant faced.

19          Let's take a second and talk about that.

20          That instruction does not say that if the defendant

21  thought he was acting reasonably, then he did not use

22  unreasonable force.

23          That instruction does not say that if the defendant

24  believed he was acting heroically or bravely that his force was

25  not unreasonable.

Closing Argument - Ms. Jenkins

1          The question that you must ask yourselves is whether a

2    reasonable officer, a reasonable police officer, faced with

3    those same circumstances would use the amount of force that

4    Aldo Brown used under the circumstances that he faced.

5          More instructions.  I believe the judge is going to

6    give you a series of factors to consider in trying to determine

7    whether or not the defendant acted unreasonably.

8          I have not listed all of the factors here, but I've

9    listed some of them, and I'd like to talk about them in

10   categories or in groups because many of them go hand-in-hand

11   based on the facts.

12         So let me start with the first two factors:

13         The need for the use of force;

14         The threat reasonably perceived by the officer.

15         I'd like you to step back and remember what happened

16   at the beginning of the encounter moments before the encounter

17   between the defendant and Mr. Howard.

18         Mr. Howard had been handcuffed to the person next to

19   him, one hand free, one hand restrained.  Officer Stacker

20   uncuffed Howard.

21         What does the fact that Officer Stacker uncuffed

22   Howard tell you about the threat that an officer reasonably

23   believes is going on around him?

24         Howard was restrained, and then Howard was not

25   restrained.

Closing Argument - Ms. Jenkins

1      The fact that Officer Stacker uncuffed Howard tells

2  you that there was no reasonably perceived threat by Howard in

3  the moments before the initial strike.

4      And how did the defendant respond when he had the

5  face-to-face confrontation with Howard?  He struck him.  He

6  didn't just strike him.  He punched him.

7      What else tells you about the threat perceived by the

8  officer?

9      In that photograph in front of you, at minute 12:47,

10  Howard is not restrained.  He is standing without any handcuffs

11  or restraints on him.  And Officer Stacker has his back to

12  Howard.

13      Officer Stacker, if he truly believed that Howard

14  posed a threat, would not have turned his back to Howard.

15      Let's talk for a moment about the seconds before the

16  defendant struck Howard for the first time.

17      What did the defendant see?  The defendant saw Howard

18  lift his shirt, lower his pants or unbutton -- unbuckle his

19  belt buckle.

20      Howard testified, as did at least two other witnesses,

21  Salah and James Gray, that Howard did that in response to a

22  command by the defendant.  He did it because the defendant

23  said, "Raise your shirt and lower your pants."

24      So what did the defendant see when that happened?  He

25  saw the defendant -- he saw Howard following his commands,

Closing Argument - Ms. Jenkins

1    following his instructions, doing what the defendant was

2    telling him to do.

3            What didn't the defendant see?  Because that's just as

4    important as what he did see.

5            The defendant did not see a gun in Howard's waistband.

6    The defendant did not see Howard holding a gun or reaching for

7    a gun.  The defendant didn't see Howard attempting to flee or

8    trying to run or even resisting the defendant.

9            Again, Howard was complying with the defendant's

10   directives, which brings me to the next factor that I'd like to

11   talk with you about, and that's the severity of the crime at

12   issue.

13           At the time of the first strike, what crime was Howard

14   committing that the defendant was aware of?

15           At the time of the first strike, the defendant didn't

16   know that Howard had a gun in his pocket.  The defendant didn't

17   know he had marijuana on him.  He found -- or his partner found

18   a book bag in the back of the store for a guy who worked in the

19   store.  Scale in there, empty plastic baggies, open bottle of

20   liquor.  He certainly didn't know at the time he punched him,

21   the first time, that Howard had a gun on him.

22           So it is true -- and I do not mean to diminish the

23   fact that the possession of a weapon, particularly a loaded

24   gun, is a serious thing.  I don't mean to diminish in any way

25   that people can be hurt or worse, when people possess loaded

Closing Argument - Ms. Jenkins

1    guns, the worst can result.  But you have to put the possession

2    of that gun in perspective.  Howard wasn't reaching for the

3    gun.  Howard wasn't trying to get away.  Howard wasn't doing

4    anything that would suggest that he was trying to resist the

5    officer, flee from the defendant, none of that.

6            My point is that Howard was committing a crime, which

7    I think based on the testimony you can conclude that the

8    defendant didn't even know of that crime at the time that he

9    first struck Howard; but even if you conclude that the

10   defendant did know something of this gun, the defendant did not

11   respond with proportional force.  He didn't do the minimum

12   amount necessary to potentially control Howard.  He used

13   unreasonable force.  He used excessive force in relation to the

14   possession of a gun that certainly was not in any way an actual

15   threat in the sense that Howard was trying to access it or use

16   it.

17           I want to stop here for a moment and talk with you

18   about some of the things you heard both Officer Stacker and the

19   defendant testify about both yesterday and today.

20           According to them, Howard was using some very nasty

21   language, inappropriate and disrespectful language, language

22   that shouldn't be used, and certainly shouldn't be used in

23   front of or directed at a law enforcement officer.  But I

24   expect the judge will instruct you that insulting or

25   threatening words alone do not justify the use of unreasonable

Closing Argument - Ms. Jenkins

1    force by a law enforcement officer.

2            And that makes sense, because the question for you is

3    whether or not the force was reasonably necessary.  And so

4    words just by themselves, just by themselves, would not be

5    reasonable on their own.

6            Next three factors:  The relationship between the need

7    for the use of force and the amount of force used; the extent

8    of the victim's injuries; and efforts by the defendant to

9    temper or limit the amount of force.

10           A couple of things I'd like to say about these

11   factors.

12           Think about the first series of strikes that occurred

13   on the video and that you heard about from the witnesses, both

14   the first initial punch and then the strikes by the cooler.

15           Based on that continuing series of strikes alone, you

16   can conclude that the defendant's actions were unreasonable.

17           The defendant didn't strike Howard once and then

18   restrain him.  He punched him, and Howard fell into the cooler,

19   and then he punched Howard again, and he choked him.  That is

20   not a person using the least amount of force necessary to

21   control a subject.  It's continued strikes.  It's escalating

22   and elevating the use of force.

23           You can see from the last photo, and it's the photo at

24   13 minutes and 33 seconds, that Howard's arm is extended, and

25   there was suggestion both in cross-examination and through the

Closing Argument - Ms. Jenkins

1    defense case that that's Howard reaching for the defendant's

2    weapon.  Three seconds before, Howard had just been punched in

3    the face, and he knows it's coming again.  He's getting ready

4    to get it again.  He is reaching forward to brace himself and

5    to potentially stop the defendant from hitting him again.

6    That's a natural instinct that anyone would have.  It's a

7    protective instinct because he's getting his face smashed in.

8    That's not Howard reaching for the defendant's gun.  That's

9    him -- his self-protection.

10           How else do you know that there was no, no effort

11   whatsoever to temper or limit the force used?  The back of the

12   store.  This portion of the recording and the testimony that

13   you heard about it is truly one of the most compelling pieces

14   of evidence that you have.

15           So Howard has already been hit at least twice, more

16   like three times, and choked.  And the defendant gets him into

17   one of the aisles.  That's the shot in front of you.  It's on

18   the left-hand side of your screen.  And the defendant gets

19   Howard to roll over on his stomach, put your hands behind your

20   back, the defendant handcuffs Howard.  He finally searches him.

21   He finds a gun.

22           You heard from the testimony of government witnesses

23   and even from the defense witnesses that the defendant walked

24   to the front of the store to show his partner what he had

25   found.  Found a loaded weapon.

Closing Argument - Ms. Jenkins

1     Is any amount of force, any amount of force, needed on

2   Howard at this time?  He is on the floor.  He is disarmed.  He

3   is handcuffed.  He poses no reasonable threat because the

4   defendant has searched him, because the defendant has

5   restrained him, because the defendant has recovered a weapon

6   from him.

7     How does the defendant respond?  How does he react?

8     That's what you see there in the photo.  He's kicking

9   him.

10     And to be sure, the defendant admitted from the

11   witness stand that he kicked him here.

12     When his counsel asked him why did he kick him?  Well,

13   he wouldn't shut up.  I was telling him to shut his mouth, and

14   he wouldn't shut up.  That's a bad day, if you meet the

15   defendant on the street, even if you're handcuffed, even if

16   you're disarmed, and he tells you to shut up and you don't do

17   it?  Should you shut up?  Of course.  Of course.  It was a

18   command.  You don't kick Howard.  That incident, that portion

19   of the video, tells you how unnecessary, how unreasonable, how

20   excessive the force in this case was.  The defendant kicked

21   Howard at that moment because he could.  That's why he did it.

22   He did it because he could.  Not because he needed to, not

23   because he should have, not because anybody's safety was

24   threatened at that moment.  He did it because he could.  That's

25   excessive.

Closing Argument - Ms. Jenkins

1    I'd like to talk with you about bodily injury, because

2  it's a topic that you've heard a lot about, and it's one of the

3  factors that you are going to have to consider.

4    The judge is going to instruct you -- I expect that

5  she will instruct you that the term "bodily injury" includes a

6  cut, abrasion, a bruise, physical pain, or any other injury to

7  the body, no matter how temporary.

8    You saw the blows.  The first blow pushed Howard back

9  so far that he stumbled into a cooler.  He's punched in the

10  ribs.  He's choked.  He's kicked in the stomach.  You don't

11  need to see physical markings on his body to know that that's

12  going to cause physical pain.  A punch of that strength is

13  going to cause physical pain, even if temporary.

14    The last factor I want to touch upon, whether the

15  victim was actively resisting or attempting to evade.

16    When you go back for your deliberations, take a look

17  at the video and see where Howard remains the entire time of

18  the encounter until he is struck for the first time.  From the

19  moment the defendant and his partner enter the store and

20  started handcuffing people, including through the time when

21  Howard was uncuffed, Howard remained in the same spot.  He's in

22  that lower corner of the screen standing in the same spot.  He

23  never attempts to flee.  He barely even moves until he is hit.

24    And what does the fact that the defendant -- excuse

25  me.  What does the fact that Howard did not attempt to flee

Closing Argument - Ms. Jenkins

1    tell you about reasonableness and what's reasonably necessary?

2    It tells you that the defendant had less severe alternatives.

3            For starters, the defendant could have just searched

4    Howard right there on the spot, with or without the assistance

5    of his partner, instead of striking him, punching him.  Second,

6    he could have restrained him.  He could have put the handcuff

7    back on Howard and recuffed him to the person standing next to

8    him or cuffed him behind his back.  The defendant could have

9    called for back-up.  The defendant could have asked his partner

10   for assistance.

11           All of these are reasonable steps that could have been

12   taken, and the defendant took none of them.  He just punches

13   Howard.

14           The alternatives tell you how -- that -- the lack of

15   the use of the alternatives tells you how unreasonable the

16   decision to hit Howard was.

17           And let me be clear.  These are split-second

18   decisions.  You don't have a lot of time.  You don't have a lot

19   of facts.  You've got to figure out what it is that you should

20   do under a tense set of circumstances.  That's not -- I'm not

21   diminishing that.  But you don't jump to level five and use

22   force of punching someone when you could simply restrain his

23   arms next to the people who were still standing there

24   restrained.  Call for back-up.  If you feel outnumbered, call

25   for back-up.

Closing Argument - Ms. Jenkins

1     The last element that I want to talk about under

2  unreasonable force is the third element, which is that the

3  defendant intended to deprive Jecque Howard of his right to be

4  free from unreasonable force.  And I note that the government

5  is not required to prove that the defendant knew that the right

6  was secured by the Constitution of the United States.

7     So this question really gets to his intent.  And for

8  all the reasons I've just been discussing, you know that these

9  acts by the defendant were intentional.  They were deliberate.

10  He didn't strike Howard once, restrain him, and use no more

11  force.  He kept using force and kept using more force and even

12  more force.  And even when Howard is disarmed and on the floor

13  and restrained, he uses force again.

14     That's one of the ways that you know his acts were

15  intentional.

16     You also heard about the defendant's training and how

17  he learned about the use of force, the Fourth Amendment, and

18  his responsibilities as a police officer when he participated

19  in the academy, the Chicago police academy.  And I point these

20  records out to you because I want you to remember that his

21  training did not end the day that he walked out of the academy

22  and they gave him a gun and a badge and said here's your oath,

23  you're on your way.  He continued to get training.  In 2003, in

24  2004, in 2005, including through some of the records I've

25  highlighted here, which are in 2006 and 2007.

Closing Argument - Ms. Jenkins

1      But how else do you know that the defendant acted

2  intentionally?  It's the reports.

3      In front of you is Government Exhibit 5, which is the

4  arrest report.  It's a five-page document.  And I'm only going

5  to highlight some portions of it.

6      On the third page, you see circled the defendant's

7  signature.  And the defendant wrote that narrative.  That

8  narrative tells -- the narrative states that the defendant and

9  his partner got information from a concerned citizen.  The

10 narrative goes on to state that Howard told Brown, "I got some

11 weed on me," and reached toward his pants pocket, when Brown

12 observed a handgun inside Howard's rear pant pocket, Brown

13 conducted an emergency take-down for officer safety and

14 recovered the gun from the subject's rear pants pocket.

15 Subject was trying to pull away from Brown, at which time Brown

16 delivered an open-hand stun to gain control.

17     That's not how it happened.  You know that from the

18 video.

19     That report would have you believe that the defendant

20 saw the gun, put Howard on the floor, and then struck him, or

21 struck him as a part of putting him on the floor.  But you know

22 that's not how it happened.  The video shows you that.

23     The defendant struck Howard well before there was any

24 take-down or any laying of Mr. Howard on the floor and

25 certainly before the gun was recovered.

Closing Argument - Ms. Jenkins

1    This narrative also states that Howard attempted to

2   flee.  Where is that in the video?  It didn't happen.

3    If the defendant is such a hero, why is he putting

4   false information in reports?  Heroes don't put false

5   information in reports.  There's no need to, because if you

6   used the appropriate amount of force, just write what happened,

7   to the best of your knowledge and recollection, but it's still

8   truthful.  That's how you know the defendant acted

9   intentionally.

10    The last point I want to make for you with regard to

11   Count One, we talked about bodily injury.  The judge is going

12   to show you the verdict form that you will get that you take

13   back to your deliberations.  And you should find the defendant

14   guilty of Count One for all the reasons we just have been

15   discussing, but you will be asked a specific question if you

16   find the defendant guilty of Count One.  And the question on

17   the verdict form will ask you whether you find that Howard

18   suffered bodily injury as a result of the acts that we've been

19   described -- discussing.  And you should check the box "yes"

20   for all the reasons we've been discussing.

21    I would remind you that despite a mugshot and despite

22   lock-up keepers and despite sergeant supervisors, the

23   government is not required to prove to you that Mr. Howard

24   suffered permanent disability or that he had any visible

25   markings on him.  It can be physical pain, no matter how

Closing Argument - Ms. Jenkins

1    temporary.

2              I want to get to Counts Two and Three with the

3    remaining few minutes of my time.

4              Counts Two and Three charge the defendant with

5    falsification of documents.

6              I expect that the judge is going to instruct you that

7    there are three elements to this offense:

8              First, that the defendant altered, falsified, or made

9    a false entry in any record or document;

10             Second, that the defendant acted knowingly;

11             And, third, that the defendant acted with the intent

12   to impede or obstruct any matter within the jurisdiction of the

13   Department of the United States.

14             And we'll take these one by one very briefly.

15             Let me start with the first one.

16             Count Two charges that the defendant made false

17   entries in that tactical response report.  That's Count Two.

18   You heard a lot about a tactical response report.  It's

19   Government Exhibit 6.  It's a two-page document.  And for

20   purposes of your evaluation here, I would ask that you start

21   with page 1.

22             You know that the defendant authored this document.

23   His electronic signature appears at the bottom.

24             And I want to talk to you about what the false entries

25   are.

Closing Argument - Ms. Jenkins

1          It's the middle section, which is enlarged on your

2    screen.  Let me start with the words to the far left, which are

3    highlighted.  "Check all that apply."

4          You've heard a lot of questions about whether officers

5    are trained on whether or not they're supposed to check every

6    box and how thorough they're supposed to be.  First and

7    foremost, the form says it.

8          Second, you heard testimony from Officer Hatch, who

9    teaches report-writing, and told you something that your common

10   sense tells you.  When you complete an official police report,

11   you should check every single box that applies.  Because if you

12   don't, the natural reading of the document is that it didn't

13   occur.  And, conversely, if you check a box, the natural

14   conclusion is that the event did occur.  You don't need anyone

15   from a witness stand to tell you that.  It's plainly on the

16   form.  But it's also a matter within your common sense.

17         And let's talk about what's checked here.

18         Under "Subject's Actions," the box is checked that the

19   subject, that's Howard, did not follow commands, and then that

20   he fled and pulled away.

21         We talked about why you know that's not true.

22         In the second section of this box under member's

23   response, that's what the defendant did, none -- excuse me, he

24   did check the box that says open-hand strike and emergency

25   take-down.  That, of course, is consistent with the arrest

Closing Argument - Ms. Jenkins

1   report narrative.  But what didn't he check?  You know he

2   kicked him.  He admitted it on the witness stand.  And you know

3   that he punched him.  He also didn't check those boxes.  That's

4   a false report.

5          Let me move to Count Three, which is the arrest

6   report.  We just looked at that a moment ago.

7          On page 3 of the arrest report, you know that the

8   defendant authored this report.  His electronic signature is

9   right there.  Right above it, I declare under penalty of

10  perjury.  We talked about the ways that the narrative is not

11  true.

12         Now, I expect that defense counsel is going to stand

13  up here and say, well, it was inadvertent, it was an accident.

14  He didn't act knowingly, which is the second element, and we'll

15  talk about it in one second.  It's just -- there's a lot of

16  stuff going on, he didn't check the right box, and the

17  government wants you to find him guilty because he didn't check

18  the right box.

19         There's something very interesting about these two

20  reports, tactical response report and the arrest report.  Many

21  of the most important aspects of it, they match each other.

22  They would have you believe, particularly the arrest report,

23  that the defendant saw a gun, took Howard to the floor, and

24  then struck him, or struck him as he was taking him to the

25  floor.  You know that's not what happened.

Closing Argument - Ms. Jenkins

1    The defendant needed these reports to say that the gun

2  was seen first and then the strikes came.  That version of

3  facts, seeing the gun first and then strikes, makes the force

4  look more reasonable, appear more reasonable.  But you know

5  from the video that that's not what happened.

6    Ask yourself this question:  If you had not seen the

7  video, if you had never seen a video in this case and you read

8  these two reports, would your impression of what happened that

9  day in the store be the same?  Absolutely not.  Absolutely not.

10  The video is the video.  The video is the best evidence of what

11  happened.  It is the piece of evidence by which everything else

12  should be judged.  Witness testimony, documents, all of it.  If

13  you just read those two reports, your impression of what Howard

14  did and how things happened would be completely different.

15  That's how you know that the reports are false.

16    We've talked a little bit about how you know that the

17  defendant did this knowingly.  He didn't author these reports

18  by mistake or put this information in here by mistake.  He

19  needed these facts to line up.  I'm not suggesting that they

20  line up perfectly, but he needed the facts to line up.  He

21  needed that gun to be out in front so that if anybody ever

22  asked, everything else seems reasonable.

23    The last element before I take my seat is that the

24  defendant acted with the intent to impede or obstruct the

25  investigation or administration of a matter within the

Closing Argument - Ms. Jenkins

1    jurisdiction of the United States or an agency of the

2    United States.  Also a mouthful.  And I expect the judge will

3    give you some further instructions on that.

4            First, the Federal Bureau of Investigation is a part

5    of the executive branch of the government of the United States,

6    and matters or investigations conducted by the FBI are within

7    the jurisdiction of the executive branch of the United States.

8            A couple of other really important instructions for

9    these two counts.

10           First, it's not necessary for you to find that the

11   defendant was successful in attempting to obstruct the -- any

12   investigation.  He doesn't have to have been good at it.  He

13   doesn't have to have gotten all the way through a successful

14   obstruction.  It's only necessary that he try, that his efforts

15   to falsify the reports we've been talking about had a

16   reasonable tendency to influence the investigation.  And of

17   course they did.  Why?  For the reasons we just discussed.

18   Because if there were no video and you just read the reports,

19   you would have a completely different impression of what

20   happened.

21           And the matter need not have been pending at the time

22   that the false reports in this case were made.  It's only

23   necessary that the acts were taken in contemplation of the fact

24   that a federal investigation could be initiated.

25           I say that to say the defendant doesn't have to know

Closing Argument - Ms. Jenkins

1   or even believe that the FBI could look into this matter.  He

2   can do it in contemplation, thinking ahead.  I'm going to make

3   sure these reports are in order with my version of events.

4           How else do you know it was in contemplation?  You

5   heard the testimony about the efforts of the defendant to go

6   back and get that videotape from Salah.  There's no question

7   that the defendant went back to the store the next day.  You

8   saw the video of that.  You'll have the video of that.  And

9   Mr. Salah, from that witness stand, told you what the defendant

10  said to him.

11          He asked him, "Is there a videotape?"  And Salah lied.

12  "No."  Were it not for that lie, I don't know that anyone would

13  have ever saw -- seen that videotape.

14          You've heard a fair amount, a lot of evidence and

15  testimony.  You've watched the video over and over.  You've

16  seen a lot of photographs.

17          The evidence presented by the government in this case

18  proves the defendant's guilt beyond a reasonable doubt, and we

19  would ask that you return the only verdict supported by the

20  evidence, and that is guilty of all counts.

21          Thank you.

22          THE COURT:  Hold on just a second, Mr. Herbert.

23          Is everyone doing fine or do you need a short break

24  before Mr. Herbert begins?

25          You don't have to be shy.

Closing Argument - Mr. Herbert

1          Okay.  All right, Mr. Herbert, please.

2     CLOSING ARGUMENT BY MR. HERBERT:

3          MR. HERBERT:  Good afternoon.

4          First of all, I'd like to thank the government for the

5     professionalism in the trial.  Obviously I'd like to thank the

6     Court.  And on behalf of my co-counsel, Jen Russell and Connor

7     Quinn, and Aldo Brown, I'd like to thank each and every one of

8     you.

9          I know nobody really wants to be picked for a jury and

10    sit on a jury, but that's what you were called upon to do, and

11    it's part of the greatest justice system in the world.  That's

12    what we have.  And in our justice system, we have some

13    tremendous rules.  And one of them is that all defendants are

14    presumed innocent until proven guilty.  They have to be proven

15    guilty beyond a reasonable doubt.  That's an instruction that

16    you're going to get from the Court.

17         I'm sure we've all been in the experience where we've

18    had a very important decision to make, one of the most

19    important decisions you have to make in life, and you hesitate

20    before making that decision.  That's reasonable doubt.

21         MS. JENKINS:  Objection, your Honor.  He cannot define

22    "reasonable doubt."

23         THE COURT:  That's sustained.

24         MR. HERBERT:  It's your job to determine reasonable

25    doubt; but in your determination, you can use your common

Closing Argument - Mr. Herbert

1    sense, your life experiences.  And I trust that when you do

2    that, you're going to come to the conclusion, after looking at

3    the evidence in this case, make no mistake about it, this is a

4    very important case.  It's a very important case for Aldo

5    Brown.  It's an important case for his family.  It's an

6    important case for law enforcement in general.  And it's an

7    important case for criminals.

8            MS. JENKINS:  Objection, your Honor.

9            THE COURT:  Sustained.

10           MR. HERBERT:  It's an important case for the

11   community.  And that's why your responsibility is so important

12   here today.

13           When I first met you and gave my opening statement --

14   and this will be the last opportunity that I get to speak to

15   you, the government will have another opportunity -- I talked

16   about movies.  Well, I'll stick with that theme.

17           You know how when you see a trailer of a movie and it

18   shows a couple of funny clips and you think, wow, that's a

19   great movie, I want to go see that.  And then I think we've all

20   experienced it, you go to the movie and you're, like, oh, my

21   gosh, those were the only two clips that were funny in the

22   entire movie.

23           That's what we have here today, Ladies and Gentlemen.

24   The government made promises to you that they would present

25   evidence to prove this case beyond a reasonable doubt.  It

Closing Argument - Mr. Herbert

1    didn't happen.

2          How do we know that?  Well, counsel's argument was

3    very eloquent, but there are many truth-tellers in that

4    argument.  You heard it.  When your case goes sour, when you

5    realize you have no evidence, what do you resort to?

6    Inferences.  Thoughts.  Assumptions.  That was 99 percent of

7    the government's case.

8          Why?  Because they couldn't prove the case.  So

9    instead they want you to rely on what they believe happened

10   here.  They want you to just look at the video, look at the

11   video.  I believe the statement was the video is the evidence.

12         Well, again, the video is kind of like that short

13   trailer that you see.  When you first watch it, I think it's

14   pretty normal to glance and squirmish a little bit.

15   (Indicating.)  But once the context is filled in, then the

16   movie becomes much more clear.

17         The evidence in this case -- the video is in evidence,

18   but is the video enough to establish proof beyond a reasonable

19   doubt?  We submit that it's not even close.  And I think the

20   government recognizes that.

21         And, again, I mentioned that there's certain

22   truth-tellers in some of the arguments.

23         You heard the government talk a lot about how Brown

24   came in and detained all these individuals and how there was

25   too much force detaining these people.

Closing Argument - Mr. Herbert

1          Aldo Brown is not charged with unlawfully detaining

2    anyone in the store.

3          Why?  Because it was lawful.  He had a right to do

4    what he did.

5          MS. JENKINS:  Objection, your Honor.  It's a

6    conclusion.

7          THE COURT:  Okay.  Hold on.  Just one objection,

8    conclusion suffices.  It's sustained.

9          MR. HERBERT:  Aldo Brown, you heard a lot of

10   discussion about.  Well, he was choking Mr. Howard.  Aldo Brown

11   is not charged with choking Aldo Brown [sic.].  So the

12   government didn't believe Jecque Howard on that point.

13         MS. JENKINS:  Objection.

14         THE COURT:  Okay --

15         MR. HERBERT:  Judge, these are reasonable inferences

16   I'm making.

17         THE COURT:  Can I be heard at sidebar just briefly,

18   please?

19      (At sidebar outside the hearing of the jury:)

20         THE COURT:  It's not permitted for you to say that the

21   government did not even believe its own witnesses.  That's an

22   improper argument.

23         It's also an improper argument to say that the broader

24   community would be impacted by this conviction.  So that would

25   be an improper one in the Seventh Circuit.

Closing Argument - Mr. Herbert

1          And also an improper argument to define "reasonable

2    doubt."

3          So that's why I'm sustaining the objections, so I

4    thought I would tell you in case you --

5          MR. HERBERT:  Thank you.

6          THE COURT:  While I have you here, I read through the

7    printed instructions, and I noticed that in the insulting words

8    instruction, we used the term "excessive force" as opposed to

9    "unreasonable force."

10          I think it would be better for us to make it all

11    parallel with "unreasonable."

12          Does everyone agree with that?

13          MS. JENKINS:  Yes.

14          MR. HERBERT:  (Nods head.)

15          THE COURT:  Okay.  So I'll just make that change.

16          And then the other thing I noticed is that I just want

17    each count on a single page for the verdict form, so that we go

18    one count with its interrogatory, second count, third count.

19    Okay?

20          Anyone need anything else about this objection?

21          Okay.  Very well.  Continue.

22      (Sidebar proceedings concluded.)

23          THE COURT:  You may proceed.

24          MR. HERBERT:  The government wants you to look at this

25    case in a tube, in a narrow vision.

Closing Argument - Mr. Herbert

1      We want you to look at this case -- and we believe

2  it's your responsibility -- to look at this case from the

3  totality of the circumstances, because that's how Aldo Brown

4  looked at this case.  And that's what's important.

5      There was discussion about how it was a bad day -- it

6  would be a bad day if you ran into Aldo Brown.

7      Well, it wasn't a bad day for the people in that store

8  when Aldo Brown came in.  It wasn't a bad day for the community

9  when Aldo Brown came in and saved Jecque Howard from

10  potentially killing somebody with that gun.  It's a conclusion,

11  it's an assumption that the government wants you to listen --

12  to take.

13      When you look at the facts to support your decision in

14  this case, as the judge instructs, it's not -- it's not on what

15  one person thought they should do or another person.  The

16  evidence comes from that chair right there.  And you heard it.

17      And in this case, we had another -- the government

18  flipped the switch again, because normally the prosecutors put

19  on evidence that support their case.  Well, the government put

20  on witnesses that buried their case.  Their witnesses.

21      The government said in opening statement that they

22  would prove that Aldo Brown violated use of force.  Used

23  unreasonable force.

24      You saw their star witness -- notice he was not

25  mentioned at all -- Larry Snelling take the witness stand.  And

Closing Argument - Mr. Herbert

1    what does Larry Snelling say?  This is the witness to prove the

2    unreasonable action.  Larry Snelling said that the actions of

3    officers depend on the actions of the subject.

4           He talked about transitioning up depending upon the

5    acts of the subject.  He talked about how what certain factors

6    should cause an officer to be more alert, a heightened level of

7    awareness.  And he talked about multiple subjects being

8    present.  Heightened, you are allowed to transition up,

9    heightened level of awareness.

10          But I think the most significant factors that

11   Mr. Snelling testified to was he talked about active resistors.

12   He talked about assailants.  With active resistors, he talked

13   about movement, however slight, even a flinch is what he said,

14   constitutes fleeing.  That's important.

15          Why?  Because fleeing is one of the elements that the

16   government is alleging is false.  They're saying he lied when

17   he put in there that this guy was fleeing.  No, he didn't.  The

18   government's own witness said he didn't.

19          MS. JENKINS:  Objection.  Misstates the testimony.

20          THE COURT:  All right.  Ladies and Gentlemen, if

21   there's ever a point where one of the lawyers' statements

22   regarding what you heard differs from what you heard, you are

23   the judges of the facts, so it will be your collective memory

24   that prevails in that area.

25          So you may proceed.

Closing Argument - Mr. Herbert

1          MR. HERBERT:  Thank you.

2          He talked about subjects creating distance.  That was

3  fleeing.

4          He talked about bladed stances of a subject.  And what

5  do we remember about that?  When somebody takes a bladed

6  stance, that person becomes an assailant.  And when that person

7  becomes an assailant, police officers are allowed to use the

8  most lethal of forces.

9          MS. JENKINS:  Objection.  Misstates the testimony.

10          THE COURT:  Okay.  I'm going to instruct you on the

11  law.  I'm going to sustain that objection.  I'm going to

12  instruct you on the law about reasonable force and unreasonable

13  force, and you'll listen to my instructions on the law.  Okay?

14          Go ahead, Mr. Herbert.

15          MR. HERBERT:  Thank you.

16          Sergeant Snelling testified that when someone is an

17  assailant, you are allowed to use direct mechanical strikes.

18  Remember I asked him what are direct mechanical strikes?  Does

19  it include (Indicating.) a punch?  Yeah, absolutely.  Does it

20  include a kick?  Absolutely.  That was the witness.

21          And then we get to Mr. Howard.  You remember

22  Mr. Howard up there.  He admitted to having the gun.  And

23  remember he said he had that gun and he was ready to shoot if

24  necessary.  Thank goodness he didn't get the chance.  He didn't

25  get the chance because of Aldo Brown's actions.

Closing Argument - Mr. Herbert

1          What else does Mr. Howard say?  This is the person --

2     he's an important witness, because if you look at the video,

3     you can't tell the totality of circumstances.  You can't

4     properly determine what Aldo Brown was experiencing at the time

5     for several reasons:

6          One, it's a very grainy video;

7          Two, and very significant, there's no sound.

8          Three -- we'll stick with the no sound factor.  That

9     is an important point.

10         So in order to find Aldo Brown guilty of these

11    offenses, we have to believe everything that was said by these

12    witnesses on the stand with regard to Mr. Howard and Mr. Gray.

13         Well, Howard, let's look at his credibility.  And it's

14    for you to determine the credibility of the witness.  And,

15    again, you use your personal experiences, but you can also --

16    and you'll be instructed on this -- you can look at other

17    factors, such as if somebody was impeached, if somebody gave

18    false testimony in the past, you can use all those facts into

19    determining how credible or uncredible a witness was.  And

20    without Howard, the government has nothing.

21         Well, let's look at Mr. Howard.  He was working at the

22    store.  That was his testimony.  That I believe is the one

23    correct statement that he made.  He was working at the store.

24    He was a dope dealer for the store.  That was his job.  He got

25    paid $300 a week.  In cash.  You'll watch the video.  Take a

Closing Argument - Mr. Herbert

1    look before the police come.  Look at how much stocking of

2    shelves this individual is doing.  Maybe that was part of his

3    job.  He also worked security.  But make no doubt about it.  He

4    was a dope dealer, and the store was his cover, and the store

5    was in on it.  That was the information that Aldo Brown had

6    when he went to the scene.  And, in fact, he was correct.  The

7    information, it was correct.  That's the witness.

8         I'm assuming that none of you have been at this

9    grocery store, but we've all been in a 7-Eleven or a small

10   convenience store.  Think about how many workers do you

11   normally see in a 7-Eleven?  One?  Maybe two?  Look at this

12   grocery store.  This is like the biggest Mariano's or Whole

13   Foods you can imagine with respect to workers.  They've got the

14   mother working there, they've got Jecque working there, his

15   brother working there.  Why?  It's all a front.  It's a

16   dope-dealing spot.

17        Let's look at some other factors that you can judge

18   when assessing credibility of a witness.

19        Jecque Howard?  He was probably high that day.  High

20   on marijuana.  How do we know that?  Of course he said, no, I

21   didn't smoke that day.  He smoked every single day in September

22   of 2012.  He said that.

23        Why is that important?  It's important to show you he

24   lied to you, but it's also important because his perception of

25   how the event occurred is critical here.  It's critical because

Closing Argument - Mr. Herbert

1    without reliance upon his version of the events, you can't find
2    Aldo Brown guilty.

3            The government makes a big point about how Aldo Brown,
4    his testimony about being scared in the store was completely
5    unreasonable.

6            Well, that argument is completely unreasonable.
7    Howard testified that he was so afraid of that store, he was so
8    afraid of being in that store, that he needed to go out and buy
9    a gun to protect himself.  He buys a gun from Kieree (phonetic)
10   or somebody on the street, $150, $100.  No FOID card.  Doesn't
11   register it.  I believe the statement was it wasn't the first
12   thing on my mind to do that.  But if he is so afraid to be in
13   the store that he has to go out and buy a gun illegally, is it
14   that unreasonable to conclude that Aldo Brown might have been
15   afraid, too?

16           Let's look at some other factors with regard to
17   Mr. Howard.  We know he's a criminal.  Bought a gun.

18           MS. JENKINS:  Objection --

19           THE COURT:  I can't hear a word you said.

20           MS. JENKINS:  Objection as to the characterization of
21   as a criminal.

22           THE COURT:  Okay.  Sustained.

23           MR. HERBERT:  Judge, if I can just --

24           THE COURT:  Sure.

25           MR. HERBERT:  I'm getting into the fact that he had a

Closing Argument - Mr. Herbert

1    loaded gun on him --

2            THE COURT:  You can do that.  I guess it's going to go

3    to the characterization of what "criminal" is.

4            MR. HERBERT:  Okay.

5            THE COURT:  So we did elicit some testimony regarding

6    his background, what he did that day, but "criminal" could mean

7    crime and all other things, so I'm going to sustain it, and go

8    ahead and factually make your argument.

9            MR. HERBERT:  He was in violation of certain crimes

10   that day that we know of:  The gun possession; the marijuana

11   possession.  And it wasn't just marijuana possession.  How do

12   we know?  The fact that he was a dope dealer, the fact that

13   this information turned out to be true, the fact that it

14   corroborated the information that Aldo Brown received prior to

15   going in there, those are all relevant factors.  We know he's a

16   dope dealer because -- he didn't admit that, of course not --

17   but we know he's a dope dealer because he's got a bag of weed

18   on him, but it's broken up into small bags, and then he's got

19   in his backpack he's got a bunch more plastic bags for -- for

20   making more smaller bags of marijuana.  He's got a scale.  Why?

21   He's a dope dealer.  That's what he does.  That's the witness

22   they want you to rely upon.

23           Another factor is with respect to the neighborhood.

24   These are all important factors going into Aldo Brown's mindset

25   when he went in there.

Closing Argument - Mr. Herbert

1          Howard himself talked about the violent nature of the

2   store.  He talks about how riots would happen routinely

3   outside.  15 to 25 people fighting in the streets.  What was

4   that about?  Is that just a couple of kids getting together?

5   No.  You know what that is.  Your experience tells you what

6   that is.  It's a gang neighborhood.  This is a gang fight.

7   With gangs comes drugs comes guns.  Relevant to Aldo Brown's

8   state of mind upon entering.

9          Another factor regarding the credibility of Howard,

10  and it is a critical one, is with respect to injury here.

11  There's no evidence that Aldo Brown was injured in this case

12  other than what Aldo Brown says.

13         Maybe I misspoke.  Other than what Howard says.

14         We see the mugshot photo of Mr. Howard on the day in

15  question.  And conveniently Howard says, oh, no, no, it was

16  over there, the left side, so you can't see it there.

17         That's convenient.

18         But we know that wasn't on the left side either.

19         Why?  Because, first of all, he never complained to

20  anyone, never complained to anyone that he was injured.  Never

21  complained that he's got, oh, look at this big scar on my face.

22  Does he look like an individual that would have been fearful to

23  speak his mind?

24         Sergeant Ben, she interviews him.  She testifies --

25         MS. JENKINS:  Objection.  Misstates the testimony.

Closing Argument - Mr. Herbert

1    THE COURT:  Okay.  Overruled.  If you think it's

2    different, folks, you're the people who are the finders of

3    fact, and so it's your collective memory that prevails.

4        Go ahead.

5        MR. HERBERT:  Sergeant Ben, you heard her testify.

6    Does she have any reason to lie?  Did she appear incredible in

7    any way?  What did she testify to?  He never said one thing to

8    me about an injury.  More important, I looked at him.  He

9    wasn't injured.  I didn't see anything.

10       The lock-up keeper that came in and testified.  Does

11   he have a reason to lie?  Is he trying to cover up some story

12   here?  He looked at him.  It's part of his duties, his official

13   duties, to check to see if an arrestee is injured.  He has to

14   fill out a form depicting that.  If he allows an arrestee to

15   come in that's injured, guess what?  Then he violated

16   department policy.  He didn't do that.  He checked he wasn't

17   injured because he wasn't injured.  Simple as that.

18       And the statements by Howard that he had cuts, they're

19   not true.  And it's relevant not only to the charge, but it's

20   relevant to the credibility of Howard, because Howard is a

21   critical witness for the government.

22       Kristi Lyons, the investigator from IPRA, her

23   testimony.  Again, the government's witness.  Her testimony was

24   to somehow show of this federal investigation going on.  You

25   remember her testimony.  I asked her about it.  Were you aware

Closing Argument - Mr. Herbert

1    of any pending federal investigation going on at the time in

2    which Aldo Brown filled out the report?  No.  Did you refer

3    this case over to the Federal Government?  At some point, yeah.

4    When would that have been?  I'm not sure, but I didn't know

5    about it until a couple days after the incident.  So it would

6    have been after that.

7          Again, critical point.  There was no pending federal

8    investigation going on.  That's an element in the charge, which

9    I'm going to get to in a moment.

10         Andrea Hyfantis.  The law instructor.  Another star

11   government witness.  Very nice woman, but what did she do to

12   help the government's case?  Nothing.  She buried it.  Again,

13   she buried it.  She's talking about -- she was asked about

14   arrest reports, a critical report in this case.  It's based

15   upon -- one of the charges is based upon the arrest report in

16   the narrative.  Well, you remember her testimony.  She said the

17   arrest report is only relevant to support the charges for the

18   arrest at issue.

19         The arrest at issue was unlawful use of a weapon,

20   being in control of it, and unlawful possession of marijuana.

21   That's it.  But what's false about that information?  What's

22   relevant about it?

23         Officer Hatch testified.  I'm not sure what, if any,

24   information she elicited for the government, but she talked

25   about TRRs and generally how they're filled out.

Closing Argument - Mr. Herbert

1      This is the government's burden in this case.  Was

2  there any evidence establishing that the information in that

3  TRR, that that was an incorrect report, that was false?  None.

4  But there is evidence to suggest that it wasn't.

5      Why?  Because Sergeant Ben was responsible for

6  approving the report.  She, in fact, approved the report, the

7  report that the government says it's fictitious on its face.

8  Well, Sergeant Ben has never been disciplined for approving

9  this fictitious report.

10      MS. JENKINS:  Objection.

11      THE COURT:  Okay.  It's sustained.

12      Go ahead.

13      MR. HERBERT:  Judge, that was testimony at the

14  trial --

15      THE COURT:  I know, but I sustained it during the

16  trial.

17      MR. HERBERT:  And then we have Mr. Gray to come to the

18  rescue of Howard's testimony.  How much does Gray help Howard's

19  testimony?  Not too well.

20      The government wants you to rely on Gray's memory of

21  exactly what happened and what was said during the incident in

22  question.  But you remember me asking Mr. Gray the questions.

23  What do you remember about this day?  Not too much.  Do you

24  remember what day it was?  No.  Do you remember what year it

25  was?  No, I don't know what year it was.  This is the person

Closing Argument - Mr. Herbert

1    that the government wants you to rely upon that his memory was

2    so sharp, as to the statements that were made, he doesn't even

3    know what year we're talking about.

4         And then we have Mr. Diban -- well, before I get off

5    Gray, he provides some excellent evidence for the defense,

6    which we don't have to present any evidence, but it goes to the

7    factors of your determination of reasonable doubt.

8         What does Gray talk about?  He talks about the

9    neighborhood, and he corroborates pretty much everyone.  He's

10   talking about there's shootings in the neighborhood.  It was

11   mostly African-American people involved.  Why is race

12   significant in this case?  Unfortunately, it is, but it's

13   relevant to the case here.  Aldo Brown received information

14   about male blacks with guns and drugs in the store.

15        When Aldo Brown comes into the store, who does he

16   focus on?  The male blacks.

17        It's important to show that he had a reason to think

18   that possibly these people might be the drug dealers and

19   gun-toters and criminals that hang out outside.  He had a

20   reason to think that.  And that's another important point.

21        When you look at this case -- and we'll go through it

22   in a minute, and I'm going to be relatively brief here -- you

23   have to look at it from the totality of the circumstances in

24   the perspective that Aldo Brown was viewing it on that

25   particular day.  It's real easy to sit and watch a video and

Closing Argument - Mr. Herbert

1   say, look, I would have done something different.  I would have

2   done a pain compliance.  I would have told them, you, stop

3   talking, put your hands behind your back.  It's real easy for

4   us to do that.  But it's not appropriate, and it's not what you

5   can do in this case.  You have to look at it from the

6   reasonable officer's perspective.  And I didn't see any

7   reasonable officer get up there and say his actions were wrong.

8   It's for you to determine.  But it was for them to prove it,

9   and they haven't done it.

10          Mr. Diban, again, he corroborates Ross's information,

11  which is relevant to Brown's state of mind.  He talks about the

12  black people coming into the store were the problem.  They were

13  such a problem that he quit.  He was so afraid of that store

14  that he quit his job.

15          But the government wants you to think that Aldo Brown

16  had no reason to be afraid.  It doesn't make sense.

17          Diban was obviously called for this issue about give

18  me the tape, this alleged conspiracy, which is not part of the

19  charges here, this alleged conspiracy to cover up the

20  investigation.

21          Well, if Brown did that, that would be an obstruction

22  of justice.  You're not here to determine an obstruction of

23  justice.  It's another factor to show that the government has

24  got no evidence.  They want to hide the ball and show, look at

25  this.  Don't look at the evidence.  Look at him choking him.

Closing Argument - Mr. Herbert

1    Well, look at the attempt to get the videotape.  It means

2    nothing here.  It's false.  It's completely false.

3            First of all, Diban, I don't know what his mastery of

4    the English language is, but it wasn't good enough to hear me

5    ask questions to him, which is why he had an interpreter, but

6    yet we need to believe that he couldn't understand what I was

7    saying a few feet away from him, but we know exactly what Aldo

8    Brown said to Diban that day.  He got that perfect.

9            I don't think so.  And you know what?  Neither did

10   Diban.

11           But you remember, I asked him, "Could you have

12   misunderstood Aldo Brown?"  Remember his answer?  "I don't

13   know."

14           Ladies and Gentlemen, all those factors that I've just

15   spent 15 minutes on, you know what they are?  Each one, in and

16   of itself, those are factors that you need to consider to

17   determine how much evidence or how much proof, how close the

18   government came to proving its case.  That's reasonable doubt,

19   looking at those factors.

20           We're a little bit less high tech.  We're old school

21   here.

22           I know.  It's not very good.  Anyway, this is going to

23   be, I suspect, an instruction that the Court is going to give

24   you.  And it refers to -- I'm sorry.

25           MS. JENKINS:  It's okay.  I see it.

Closing Argument - Mr. Herbert

1    MR. HERBERT:  Talks about the use of force, whether or

2    not it was unreasonable from the perspective of a reasonable

3    officer.  In performing this job, the officer can use force

4    that is reasonably necessary under the circumstances.

5    Again, those are the factors that you need to look at

6    when you determine this -- when you determine your verdict in

7    this case.

8    I just want to highlight some of these for you; but,

9    again, you're going to see them.

10    Counts Two and Three deal with the reports.

11    And the elements, the first one talks about how the

12    defendant altered, falsified, or made a false entry in any

13    report.

14    Well, with respect to the arrest report, like I said,

15    there's no evidence that any of the information in there was

16    false.  None.  So the government's argument that, well, he

17    should have put in there that he kicked him, he should have put

18    in there that he had the sequence wrong between when he

19    received the marijuana and when he struck him, it's completely

20    irrelevant.  It's a sign that their case is weak.

21    With regard to the TRR, again, government's burden to

22    prove that Aldo Brown falsified this report.

23    Well, in the report, I guess they're alleging that the

24    element of classifying him as an active resistor was false.

25    Well, guess what?  Larry Snelling, the sergeant, testified.

Closing Argument - Mr. Herbert

1    And that count is out the window, because Snelling talked about

2    the actions that would determine somebody into an active

3    resistor.  And based upon Snelling, this guy wasn't only an

4    active resistor, he was an assailant.

5          But it also has to be done knowingly.  And I'll show

6    you that instruction as well.

7          Knowingly with the intent to impede, influence an

8    investigation of a matter within the FBI.  Okay?

9          Again, there was no investigation by the FBI on the

10   date in which he filled out these reports.  So, therefore, how

11   in the world can Aldo Brown, if we believe their theory, how in

12   the world would Aldo Brown know the FBI was conducting an

13   investigation?  If he was right, they weren't.  But more

14   important, the government wants you to believe that this was

15   some type of conspiracy of Aldo Brown.  He wanted to conceal

16   his illegal acts, his violence.  Well, why does he mention it

17   in here then?  If he wants to conceal this and the guy is not

18   injured, he could just put him in the back.  I don't know what

19   he's talking about.  I didn't hit him.  Do you see any marks on

20   him?  Did he make any complaints?  Why am I going to put in

21   there that he used stunning techniques?  Why is he going to put

22   in there that he used an emergency take-down.  Is that evidence

23   of guilt?  Is that consciousness of guilt?  I don't think so.

24         Second of all on that point, why is he doing the TRR

25   if he's trying to cover this thing up?

Closing Argument - Mr. Herbert

1    You heard the testimony, a TRR is supposed to be used

2    when there's allegations of force.

3    Well, what do we have here?  Aldo Brown makes the

4    decision to do the TRR.  Nobody tells him you've got to do

5    this.  There's no allegations of misconduct against him by

6    anybody at this point.  But he fills it out.  That's an

7    allegation that he's trying to be deceptive?

8    And look at the evidence with regard to the TRR.  His

9    deception?  We know it's not the box for the active resistor

10   because Snelling already proved that was 100 percent correct.

11   So we're sitting here because he failed to check a box that

12   says "kick."  Really?  We're in a federal courthouse with him

13   as a defendant because he failed to check a box on some

14   meaningless document?

15   Knowingly.  It's not enough that he didn't put

16   something in.  It's not enough that something was not in the

17   right sequence.  It's meaningless.  How do we know that?

18   You'll get this instruction:  A person acts knowingly if he

19   realizes what he is doing and is aware of the nature of his

20   conduct and does not act through ignorance, mistake, or

21   accident.

22   Well, I guess we're down to just the "kick" box here.

23   And why wasn't that checked?  Was that a cover-up for the

24   conspiracy?  Was that a knowingly alteration?  First of all,

25   it's not altering anything.  It's an omission.  There's a

Closing Argument - Mr. Herbert

1    difference between an omission and entering false information.

2    You're not going to see any elements in the charges that says,

3    well, omitting -- failing to check the "kick" box, that's

4    enough for this statute.  You're not going to see in there that

5    omitting this information, that's enough.  It's falsification.

6    But failing to check the box?  I don't think so.

7            In conclusion, we have to look at the factors that

8    Aldo Brown was experiencing without relying upon conclusions by

9    the government.  And not only are they not evidence, evidence

10   that they were required to produce to charge their case,

11   they're wrong.  I mean, you look at -- their whole argument is

12   that Aldo Brown didn't see that gun.  How do they know he

13   didn't see it?  How in the world can they know what Aldo Brown

14   saw?  Does the video conclusively show that he didn't see a

15   gun?

16           Here.  Here's the gun.  They -- the government wants

17   you to think that this gun, it was in his pocket so you

18   couldn't have seen it.  Here's my pocket.  Here's the gun.

19   (Demonstrating.)  And it's all the way down.  Is there any

20   problem seeing that gun?

21           But in order to prove its case, you have to agree -- I

22   can't get the thing out now.

23       (Laughter.)

24           MR. HERBERT:  You have to agree with their conclusion

25   that -- with all their conclusions, but the important fact here

Rebuttal Argument - Ms. Romero

1    is that it's not conclusions, Ladies and Gentlemen.  It's not

2    assumptions.  It's not looking at a piece of evidence and

3    filling in all the blanks.  The government was required to fill

4    in the blanks.  They didn't do it.

5            The only finding that is going to be just in this case

6    from our perspective is a finding of not guilty on all three of

7    those counts.

8            I thank you again.  Thank you.

9            THE COURT:  Okay, folks.  Let's just take your

10   afternoon break so that we can go into rebuttal and then the

11   instructions afterwards, so I'll see you at 3:15.

12           COURT SECURITY OFFICER:  All rise.

13      (Recess taken from 3:00 p.m. to 3:20 p.m.)

14           THE COURT:  Please be seated everyone.

15           Ms. Romero, you may do your rebuttal argument.

16           MS. ROMERO:  May I use the --

17           THE COURT:  Sure.  Let me see what you need.  Are you

18   doing the Elmo?

19           MS. ROMERO:  Yes, please.

20           THE COURT:  All set.

21           MS. ROMERO:  Thank you, your Honor.

22   REBUTTAL ARGUMENT BY MS. ROMERO:

23           MS. ROMERO:  At the beginning of this trial, I told

24   you that the defendant had two problems:  The Constitution of

25   the United States and the video.

Rebuttal Argument - Ms. Romero

1    After listening to the evidence in this case, after

2    watching the testimony, and after watching the video, you're

3    now being asked to decide whether what the defendant did was

4    reasonable and whether he lied.  And the judge will instruct

5    you on the law, but you already know the answer lies between

6    the video and the Constitution.

7    One of the things I wanted to clarify from defense

8    counsel's argument was when you're instructed by the judge

9    about how to consider whether the decision by the defendant was

10   reasonable, you will be instructed that you must make this

11   decision based on what the officer knew at the time that force

12   was used, not based on what you know now.  And that's important

13   because time is exactly what separates you from the defendant

14   at the time that this incident took place.

15   And the benefit of hindsight is this notion that

16   defense counsel keeps trying to bring up.  It's Monday-morning

17   quarterbacking.

18   It's a difficult job.  Nobody disputes that being a

19   police officer is an important and difficult job.

20   But the video doesn't lie about what actually happened

21   on that day and what the defendant saw and did as a result.

22   And this notion that just because there's no audio, you somehow

23   can't figure it out is wrong.

24   And I'm going to direct your attention when you

25   deliberate for that specific purpose to Government Exhibit 10

Rebuttal Argument - Ms. Romero

1   Group Still 22, which is a still shot for minute 12:47.6 of the
2   video.
3          That, Ladies and Gentlemen, is what the defendant saw
4   when he went to the front of the store right before he hit the
5   victim.
6          And that, Ladies and Gentlemen, is the premise on
7   which you can start your deliberations.  It's not that he had a
8   gun.  It's not that he had marijuana.  That is exactly what the
9   defendant saw at the time.
10         In addition to that, I'll ask you to take a look at
11  Government Exhibit 2 Group Still Number 7, which is the moment
12  right as the strike is about to happen, and that's minute
13  13:06.  And ask yourselves, Ladies and Gentlemen, do you need
14  audio?  Do you need audio to understand what you're looking at?
15         There's a very famous saying by a judge that says,
16  "Even a dog knows the difference between being stumbled on and
17  being kicked."
18         Now, you do have audio in this case because you got to
19  hear the testimony of the people who were there, and a lot was
20  made about their credibility and certain aspects of their
21  testimony that I want to cover with you.
22         In particular, you heard a lot about Mr. Howard.  And
23  the fact that he's from a bad neighborhood, the fact that he
24  had a gun, that somehow that overrides what he told you
25  happened that day, even though it matches the video, and even

Rebuttal Argument - Ms. Romero

1   though it matches the testimony of a lot of witnesses, a lot of

2   very different witnesses.

3          Mr. Salah came in and testified, the very first

4   witness you heard from, and he was a 20-something who worked

5   for minimum wage in a convenience store in one of the worst

6   areas of the city.  They would like you to believe that he's

7   some drug kingpin running a front, but you know that's not

8   true.  He came in and he told you I couldn't believe what

9   happened, it was wrong, and I knew it was wrong, and that's why

10  I protected the video.  He also came in, and he was very honest

11  about what he didn't hear and what he didn't remember.  He

12  didn't come in and say, oh, I remember everything from start to

13  finish, every detail.  The defendant said these terrible things

14  to him, I'm going to beat you up.  No.  If he was -- if he was

15  in here lying, that's not -- he would have come up with

16  something better is what I'm saying.  Instead, he told you

17  exactly what he heard, exactly what he didn't hear, and what he

18  did as a result.

19         Similarly, Mr. Howard, he was very honest when he told

20  you he didn't remember or he didn't know the answer to a

21  question.  When he talked about his injuries, he even said,

22  well, this one stung, the other one really hurt, and that's why

23  I held my jaw, I was in shock.  We asked him questions, both

24  during my questioning and during defense counsel questioning,

25  where he said I don't know or I don't remember, but he didn't

Rebuttal Argument - Ms. Romero

1  jump to give answers that would incriminate the defendant.

2  That's not what happened.  And, again, the information he

3  provided you is consistent with the information that Mr. Salah

4  provided you and that's on the video.

5          You also heard from Mr. James Gray.  And let's take a

6  step back here.  Mr. Gray was one of the people who was in the

7  store that the defendant claimed he observed that made him feel

8  threatened.  Mr. Gray is an older man who happened to be at the

9  wrong place at the wrong time.  He told you honestly actually I

10  don't even remember what the year was, but he remembered what

11  happened.  That doesn't change what happened.  And what he told

12  you was also consistent with the video.  He didn't come in here

13  trying to turn you against the defendant, trying to say

14  terrible things about the defendant.  He answered really

15  honestly.  And when he didn't know the answer to something,

16  that's what he said.

17          Similarly, Mr. Diban, he told you he's originally from

18  Yemen.  He only went as far as the fourth grade.  He moved to

19  the United States and learned to speak English at the same

20  time.  Again, this was some type of criminal mastermind who is

21  plotting with Mr. Howard and plotting with Mr. Salah to somehow

22  make the defendant look bad?  No, he came in, and he answered

23  the questions to the best of his ability.

24          And I'll also ask you to remember when you watch the

25  video and you watch their demeanor in the video, you can

Rebuttal Argument - Ms. Romero

1    compare it to the demeanor that you saw in court.  None of

2    these people were aggressive people, were confrontational

3    people.  That's not what came across in court.

4         And, strangely enough, it all matches up with the

5    testimony of someone who wasn't even there.  For example,

6    Kristi Lyons.  She told you she interviewed the defendant on

7    October 2nd after the incident, and she saw the scab exactly --

8    I'm sorry, that she interviewed Mr. Howard a couple of days

9    after the incident, and she saw the scab exactly where

10   Mr. Howard said he had it.  And somehow she's in on this

11   conspiracy, too, to make the defendant look bad, to make him

12   look unreasonable.  You know that doesn't make any sense.

13        Now, the defense does not have to put on a case, but

14   they chose to.  So let's talk about it.

15        The defense case consisted of a number of people who

16   worked with the defendant, but none of which who were actually

17   at the store when the incident happened.  And if you focus on

18   the people who were at the store when the incident happened

19   that testified as part of the defense case, you're left with

20   two people:  Officer Stacker and the defendant.  And Officer

21   Stacker told you he didn't see what happened.  So you're left

22   with the testimony of the defendant, which you listened to over

23   the course of two days.  And I urge you to go -- when you go

24   back in your deliberations to watch the video and look at the

25   stills and ask yourselves, is his testimony credible on any of

Rebuttal Argument - Ms. Romero

1   the events that he testified about?  The answer is no, because

2   if you look at the objective evidence, a video, the testimony

3   of strangers who didn't know him, didn't even know his name the

4   day that he came in, didn't even identify himself, when you

5   look at that and how it all comes together, you get a clear

6   picture that this is not a situation where there's an agenda,

7   where there's some type of grudge.  This is a situation where

8   you got to see the truth in real-time, and it was ugly.

9       Now, defense counsel made a lot of argument about,

10   well, then why did he fill out these reports, if the defendant

11   really didn't want to cover -- if the defendant didn't

12   intentionally use unreasonable force, if he didn't think what

13   he did was unreasonable, then why did he report it in his

14   reports?  Well, let's be clear.  The testimony from the Chicago

15   Police Department officers was that they're required to

16   complete reports.  He didn't have a choice in the matter.  He

17   didn't volunteer.  He didn't walk into the FBI building and

18   say, hey, I hit someone today, I'd like to talk to you about it

19   and report it.  That's not what has to happen.  It's something

20   he had to do as part of his job and that he had to do honestly.

21       The other thing that didn't make sense about the

22   defendant's testimony was that he was so scared to go to that

23   store and the threat level that he felt that that store was so

24   intense, but he had four days approximately from the time he

25   got the tip to the time he went to the store, and they didn't

Rebuttal Argument - Ms. Romero

1    get a warrant, they didn't ask for back-up, they didn't bring

2    additional officers with them.  And once they get there, you

3    saw what happened.  They only handcuffed some people, not

4    everybody, even though today, you heard the argument that

5    everybody was in on drug dealing, everybody was very dangerous

6    at the store.  That's not what he did.

7            Now, briefly, with respect to the reports, the

8    defendant was very careful in the arrest report to use the term

9    "emergency take-down."  And you heard from Sergeant Snelling

10   that that specifically means taking someone down to the ground.

11   You'll see from minute 13:05 until almost minute 15, that's not

12   what happened.  The defendant punched, choked, punched, and

13   then took Mr. Howard down to the ground.  And if you look at

14   the timing of the reports, it's clear that he completed those

15   pretty much within hours after -- after they had gotten back

16   from the store and before he had ever seen the video.  So the

17   fact that his lies, that his false entries in official

18   documents are bad, the fact that he's a bad liar on police

19   reports, that doesn't mean that he didn't lie.  The fact that

20   he didn't get his story straight doesn't mean that he didn't

21   lie.

22           Now, one of the things that was brought up also is

23   this notion that, well, the reports were approved, and they

24   were approved by people who were superior to him.  You

25   shouldn't give that any deference whatsoever because the

Rebuttal Argument - Ms. Romero

1   testimony was very clear that these reports were just approved

2   basically for completeness.  Nobody went out and actually

3   investigated this before approving those reports.  So you

4   shouldn't spend any time on that.

5           And, again, this notion that somehow the defendant,

6   who was a member of the law enforcement community for 12 years,

7   as he told you today, didn't know that the FBI would

8   investigate the violation of a federal crime.  I mean, Ladies

9   and Gentlemen, you can use your common sense, but everyone

10  knows that if they commit a crime, the FBI could investigate

11  them, regardless of whether it's violating civil rights,

12  regardless of whether it's a bank robbery, regardless of

13  whether it's drug dealing.  So the notion that somehow the

14  defendant didn't have this doesn't make any sense.  And when

15  you look at the elements of the offense for Count Two and Count

16  Three, all you have to find is that he contemplated that

17  possibility.

18          Finally, I think the term was thrown around with

19  respect to the reports that these are meaningless documents.

20  Ladies and Gentlemen, he's a sworn police officer who had to

21  declare and provide information under penalty of perjury.  It's

22  easy to call them "meaningless" today when they don't match

23  your story, but you know that these were important reports,

24  both from the point of view of the Chicago Police Department,

25  the supervisors who signed them, the officers who write them,

Rebuttal Argument - Ms. Romero

1    and other federal agencies or law enforcement agencies who use

2    them and rely on them.

3         Now, I'm going to talk to you a little bit about the

4    Constitution.  One of the things that was thrown around was

5    this notion that the community somehow benefited by what the

6    defendant did.

7         Well, Ladies and Gentlemen, the defendant lives in a

8    community where the Constitution is the rule of law.  The

9    defendant lives in a community and is a police officer in a

10   community where citizens have the right not to be beaten up by

11   the police.  And if he does not consider that when doing his

12   job, then he's abusing or misusing his power, because there's

13   limits to his power under the Constitution.  And the

14   Constitution, Ladies and Gentlemen, it's not a line in the

15   sand.  It's not a hoop in the circus.  It's the laws that our

16   country was built on.  And under those laws, we are all

17   citizens, regardless of what neighborhood you live in,

18   regardless of what opportunities you had in life, regardless of

19   what bad choices you make, you are a citizen under the

20   Constitution.  And the defendant does not get to be judge and

21   jury of you, bypass an entire system set up to determine if

22   people are guilty of crimes, just because he's a police

23   officer, just because he thinks he knows better.

24        Now, there was this notion thrown around, too, that

25   somehow, you know, the defendant is a hero and he saved lives

Rebuttal Argument - Ms. Romero

1    when he beat up Mr. Howard and then found a gun.

2           Let's be clear what happened here, Ladies and

3    Gentlemen.  He punched first and asked questions later, and

4    that's not the job of the police.

5           In addition to that, and I'll use another famous

6    expression, even a broken clock is right twice a day.  So the

7    notion that the defendant gets to, on a hunch, punish people

8    for the possibility that they may commit a crime is not the

9    law, as the judge will instruct you.

10          When I was growing up, my grandfather used to always

11   say to me facts are stubborn things.  And I'll leave you with

12   the notion that the video in this case is a stubborn thing.

13   The two stills that I showed to you during this argument are

14   very stubborn things.  The testimony of a bunch of strangers

15   and clerks at a terrible store in a terrible neighborhood is a

16   really stubborn thing.

17          And when you go back in your deliberations, you have

18   to consider all of those facts, as well as the law that the

19   judge gives you, in deciding this case.  And if you do, I know

20   you'll reach the only verdict consistent with the evidence,

21   which is guilty on all counts.

22          Thank you.

23       (End of excerpt.)

24                    *    *    *    *    *

25

Rebuttal Argument - Ms. Romero

1              C E R T I F I C A T E

2        I certify that the foregoing is a correct EXCERPT of the

3    record of proceedings in the above-entitled matter.

4

5

6    /s/ GAYLE A. McGUIGAN                    July 28, 2016
     Gayle A. McGuigan, CSR, RMR, CRR                   Date
7    Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25