In the

# United States Court of Appeals

## For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

————————————

No. 16-1603

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

*v.*

ALDO BROWN

*Defendant-Appellant.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CR 674 — **Virginia M. Kendall**, *Judge.*

————————————

ARGUED SEPTEMBER 8, 2016 — DECIDED SEPTEMBER 8, 2017

————————————

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. While investigating a tip that illegal drugs were being sold from a south-side convenience store, Chicago Police Officer Aldo Brown sucker-punched a store employee for no apparent reason. As the dazed employee attempted to stagger away, Brown continued to beat and kick him for about two minutes. The beating was caught on the store's surveillance camera. A federal grand jury indicted

Brown for willfully depriving the employee of his Fourth Amendment right to be free from excessive force inflicted by a law-enforcement officer.

At trial Brown sought to introduce expert testimony from a former Chicago police officer who would testify that Brown's actions were consistent with departmental standards. Ruling on the government's motion in limine, the district judge excluded the expert witness, reasoning that departmental policy was immaterial to the Fourth Amendment inquiry and that the expert's proposed testimony might include an improper opinion about Brown's state of mind.

The jury found Brown guilty. He challenges his conviction, arguing that the judge wrongly excluded his expert witness. We reject this argument and affirm. Expert testimony about police standards may appropriately assist the jury in resolving some excessive-force questions, but sometimes evidence of this type is unhelpful and thus irrelevant, particularly when no specialized knowledge is needed to determine whether the officer's conduct was objectively unreasonable. The misconduct alleged here was easily within the grasp of a lay jury, so the judge did not abuse her discretion in excluding the expert.

## I. Background

On September 27, 2012, Chicago Police Officers Aldo Brown and George Stacker entered a convenience store in Chicago's South Shore neighborhood to investigate a tip that drugs were being sold there. The officers handcuffed several people near the entrance, including a store employee named Jecque Howard. The officers then searched the store. After

completing his search, Stacker returned to the front of the store and spoke to Howard for a few minutes, removing his handcuffs. Brown approached and ordered Howard to show his waistband. Howard lifted his shirt in compliance with the officer's order.

Then, while Howard stood motionless, Brown punched him in the face. As Howard reeled from the blow, Brown grabbed him by the neck and held him against a large refrigerator. At Brown's direction Howard retrieved a small bag of marijuana from his back pocket and turned it over to Brown. Without provocation, Brown punched Howard in the ribs and pulled him down an aisle toward the back of the store where he forced him to lie on the floor on his back. When Howard attempted to sit up, Brown hit him in the face again and forced him back to the ground on his stomach. Brown then handcuffed Howard, searched his back pockets, and found a handgun. Brown confiscated the gun and walked toward the front of the store to show it to his partner, then returned to kick Howard in the ribs before placing him under arrest. Surveillance cameras captured the episode on silent video.

In his arrest report, Officer Brown described the incident as an emergency takedown and explained that it was necessary because Howard reached for the firearm. In his tactical-response report, the officer stated that Howard "fled" and "pulled away" after the takedown. The tactical-response report has a space for the officer to record whether he used a "close hand strike/punch" or "kicks" during the incident in question. Brown left those boxes unchecked.

A federal grand jury returned an indictment charging Brown with three crimes: two counts of falsifying a police

record, *see* 18 U.S.C. § 1519 (one count for each report), and one count of willfully depriving another of a federal right under color of law, *see id.* § 242. The § 242 count alleged that Brown used excessive force against Howard, depriving him of his Fourth Amendment right to be free from unreasonable seizure.

At trial Brown testified that he delivered the first punch because he noticed the gun in Howard's back pocket. He testified that he extended the confrontation only because Howard threatened him, incited onlookers to rough him up, failed to comply with his orders, tried to grab his gun, and attempted to flee.

To support his theory that his actions were reasonable given the circumstances, Brown planned to call John Farrell, a former Chicago police officer, as an expert witness. According to Farrell's expert report, his proposed testimony would take the jury through a frame-by-frame narration of the surveillance video and describe how the Chicago Police Department's "Use of Force Model" applied to Brown's confrontation with Howard. Specifically, Farrell planned to testify that Howard was an "active resister" and an "assailant," to use the parlance of the Use of Force Model. Farrell based this opinion primarily on his review of the video and an interview he conducted with Brown. Farrell also planned to offer his conclusions that Brown's actions were consistent with departmental policy and that his response was appropriate under the circumstances.

The government moved in limine to exclude Farrell's testimony on multiple grounds. The judge granted the motion. Applying Rules 403 and 702 of the Federal Rules of Evidence, the judge reasoned that Farrell's testimony was

largely immaterial and would not assist the jury. The judge noted that the question for the jury was whether Brown violated Howard's constitutional rights, not whether he violated the Chicago Police Department's internal rules, and the expert's specialized knowledge of police procedures was unhelpful because the alleged misconduct—punching and kicking—was well within the average juror's comprehension. She concluded as well that Farrell's testimony would be unfairly prejudicial because the jurors might defer to his conclusions about the reasonableness of Brown's actions rather than reaching their own independent judgment.

The judge also worried that Farrell's proposed expert testimony was likely to implicate Rule 704(b), which prohibits expert opinion about a criminal defendant's state of mind. Farrell apparently intended to tell the jury what Brown was likely thinking at each stage of the confrontation and explain why his state of mind justified his actions. Finally, the judge was concerned that Farrell's testimony, which was based in part on his interview with Brown, would introduce Brown's version of events through the expert.

Though she excluded Brown's expert witness, the judge permitted the government to call two instructors from the Chicago Police Department's Education and Training Division to lay a factual foundation for the report-falsification charges. The judge allowed the instructors to testify for this limited purpose, but she barred them from discussing the substance of the training that officers receive on the Fourth Amendment in general or the use of force in particular. She also precluded them from offering opinions about whether Brown used excessive force or had improperly filed a report.

More specifically, Andrea Hyfantis, the first departmental witness, testified that in 2002 and 2003, she was an instructor for Brown's class of recruits. She told the jury that she taught the recruits about the importance of truthfulness when filing a police report. She also testified that she instructed them in the basics of Fourth Amendment law, though she adhered to the judge's limitation and did not describe the substance of this instruction. The second instructor, Yolanda Hatch, explained the Chicago Police Department's training on filing postincident reports.

The jury acquitted Brown of falsifying his reports but convicted him of willfully violating Howard's Fourth Amendment right to be free from excessive force. This appeal followed.

## II. Discussion

Brown limits his appeal to the exclusion of his expert witness. We review de novo whether the district court applied the proper legal framework for admitting or excluding expert testimony. *Lees v. Carthage Coll.*, 714 F.3d 516, 520 (7th Cir. 2013). The judge applied the proper framework here, so we review her evidentiary ruling for abuse of discretion. *See United States v. Trudeau*, 812 F.3d 578, 590 (7th Cir. 2016). District judges have wide discretion over decisions to admit or exclude evidence; we will reverse only if no reasonable person could take the judge's view of the matter. *United States v. Molton*, 743 F.3d 479, 483 (7th Cir. 2014). Even if we find an abuse of discretion, a new trial is warranted only if the judge's error affected the defendant's substantial rights. *Trudeau*, 812 F.3d at 590 (citing FED. R. CRIM. P. 52(a)). That is, a new trial is appropriate only if the average juror would have found the government's case significantly less

persuasive had the wrongly excluded evidence been admitted. *Id.*

The judge based her decision to exclude Farrell's testimony primarily on Rule 403, which permits the judge to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. She also invoked Rule 704(b), which generally prohibits opinion testimony about a criminal defendant's state of mind.

## A. Rule 403 and Expert Testimony on Departmental Policy

The Fourth Amendment prohibits law-enforcement officers from using excessive force during an arrest as a necessary corollary of the Amendment's prohibition of unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 395 (1989). When an officer is accused of using excessive force, the decisive question is whether the officer's conduct meets the Fourth Amendment's objective standard of reasonableness. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015). Objective reasonableness is "not capable of precise definition or mechanical application." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) (quotation marks omitted). Rather it "turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (internal quotation marks omitted). Ultimately the officer flunks the test if, in light of the circumstances, he "used greater force than was reasonably necessary to effectuate the seizure." *Williams*, 797 F.3d at 473.

The excessive-force inquiry is governed by constitutional principles, not police-department regulations. *Scott v. Edinburg*, 346 F.3d 752, 760–61 (7th Cir. 2003). An officer's compliance with or deviation from departmental policy

doesn't determine whether he used excessive force. Put
another way, a police officer's compliance with the rules of
his department is neither sufficient nor necessary to satisfy
the Fourth Amendment's reasonableness requirement. Police
policies are not nationally uniform; nor are they static. If
compliance with departmental policy were decisive, the
Fourth Amendment's reasonableness standard would "vary
from place to place and from time to time." *Whren v. United
States*, 517 U.S. 806, 815 (1996). Worse, if compliance with
departmental policy were the applicable legal standard, the
police department itself would become the arbiter of Fourth
Amendment reasonableness—a prospect that would have
horrified those responsible for the Amendment's ratification.
*See Illinois v. Rodriguez*, 497 U.S. 177, 191 (1990) (Fourth
Amendment rights were "deemed too precious to entrust to
the discretion of those whose job is the detection of crime
and the arrest of criminals.") (quotation marks omitted);
1 ANNALS OF CONG. 439 (1789) (Joseph Gales ed., 1834)
(James Madison expressing the expectation that the coun-
try's "independent tribunals of justice will consider them-
selves in a peculiar manner the guardians" of the individual
liberties secured in the Bill of Rights and that the courts "will
be an impenetrable bulwark against every assumption of
power in the Legislative or Executive").

    With these background principles in mind, we reasoned
in *Thompson v. City of Chicago* that a police officer's violation
of departmental policy is "completely immaterial [on] the
question … whether a violation of the federal constitution
has been established." 472 F.3d 444, 454 (7th Cir. 2006).
*Thompson* involved an excessive-force claim under 42 U.S.C.
§ 1983, the civil analogue of § 242. We affirmed the district
court's exclusion of the Chicago Police Department's use-of-

force orders. 472 F.3d at 453. We also affirmed the court's exclusion of expert testimony from a police sergeant who would have offered an opinion about the reasonableness of the officer's conduct based in part on the use-of-force orders. *Id.* at 457.

Despite its strong language, *Thompson* should not be understood as establishing a rule that evidence of police policy or procedure will *never* be relevant to the objective-reasonableness inquiry. We recently clarified that expert testimony concerning police policy is not categorically barred. *See Florek v. Village of Mundelein*, 649 F.3d 594, 602–03 (7th Cir. 2011). Even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field. In those instances an expert's specialized knowledge can "help the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702 requires. FED. R. EVID. 702(a).

Expert testimony of this type may be relevant in cases where specialized knowledge of law-enforcement custom or training would assist the jury in understanding the facts or resolving the contested issue. For example, if it's standard practice across the country to train officers to handle a given situation in a particular way, expert testimony about that training might aid a jury tasked with evaluating the conduct of an officer in that specific situation. The legal standard contemplates a reasonable *officer*, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases. *Florek*, 649 F.3d at 602.

Evidence of purely localized police procedure is less likely to be helpful than nationally or widely used policy. The

jury's task is to determine how a reasonable officer would act in the circumstances, not how an officer in a particular local police department would act.

The level of factual complexity in the case may also bear on the relevance of expert testimony about police practices or protocols. In many cases evaluating an officer's conduct will draw primarily on the jury's collective common sense. The everyday experience of lay jurors fully equips them to answer the reasonableness question when a case involves "facts that people of common understanding can easily comprehend." *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987). The jury's common experience will suffice, for example, when "police use[] their bare hands in making an arrest, the most primitive form of force." *Florek*, 649 F.3d at 602 (internal quotation marks omitted). But when "something peculiar about law enforcement (*e.g.*, the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact," a juror's everyday experience may not be enough to effectively assess reasonableness. *Id.* If a case involves "a gun, a slapjack, mace, or some other tool, … the jury may start to ask itself: what is mace? what is an officer's training on using a gun? how much damage can a slapjack do?" *Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993).

Importantly, a per se rule against expert testimony about police policy or procedure is particularly inappropriate in criminal cases. Brown stood accused of violating § 242, which penalizes the *willful* deprivation of another's federal right under color of law. The statute codifies a specific-intent crime; though the officer need not "have been thinking in constitutional terms," he can be convicted under § 242 only

if he "is aware that what he does is precisely that which the statute forbids." *Screws v. United States*, 325 U.S. 91, 104, 106 (1945); *see also United States v. Brown*, 250 F.3d 580, 584–85 (7th Cir. 2001). It might be less likely that an officer knew that his actions would deprive another of a federal right if those actions fell entirely within widely used standardized training or practice.

Furthermore, in a criminal case, the defendant has a constitutional right to a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 331 (2006) (quotation marks omitted). When evidence might support a theory of innocence, the trial judge must be free to "focus on the probative value or the potential adverse effects of admitting the defense evidence." *Id.* at 329. Categorically excluding this type of evidence without a case-specific inquiry under Rules 403 and 702 would raise serious constitutional concerns. *See Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (A "legitimate interest in barring unreliable evidence does not extend to *per se* exclusions that may be reliable in an individual case.").

Though it's not correct to read *Thompson* as establishing a per se rule of exclusion, the judge appropriately exercised her discretion in excluding the expert's testimony here. To repeat, the judge receives "special deference" in making these determinations, and her decision will be upheld unless "no reasonable person could take [her] view" of the matter. *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008) (quotation marks omitted). That deference is more than enough to carry the day.

This case provides a textbook example of easily comprehensible facts. Brown was indicted for punching and kicking

Howard. He didn't use a sophisticated tool or technique; he hit a motionless man in the face with his fist and continued to beat and kick him before placing him under arrest. An expert's explanation of the Chicago Police Department's Use of Force Model would have added nothing that the jurors could not ascertain on their own by viewing the surveillance videotape and applying their everyday experience and common sense. And as the district judge concluded, the admission of Farrell's testimony may have induced the jurors to defer to his conclusion rather than drawing their own. *See Thompson*, 472 F.3d at 458. Accordingly, the judge did not abuse her discretion in excluding Farrell's expert testimony about departmental use-of-force standards.

## B. Rule 704(b)

Farrell also planned to offer his opinion that Brown acted reasonably under the circumstances—an opinion based in part on Brown's version of events as recounted in exculpatory statements he made to Farrell in an interview. As the judge saw it, this expert testimony came too close to the line drawn in Rule 704(b), which prohibits expert opinion about a criminal defendant's state of mind.

Brown insists that Farrell relied on his own experience and understanding of the facts to arrive at an admissible opinion on the ultimate question of objective reasonableness. Expert opinions on ultimate issues are not categorically impermissible. *See* FED. R. EVID. 704(a). But Rules 403, 702, and 704(b) operate (if in different ways) to prohibit expert opinions that would "merely tell the jury what result to reach." *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (quoting FED. R. EVID. 704 advisory committee's note to 1972

proposed rules). That's what Farrell's opinion testimony would have done here.

Brown falls back on a general argument that because Farrell is an expert on the use of force, his opinion about objective reasonableness should have been admitted. But an expert's role is to "help the trier of fact to understand the evidence," FED. R. EVID. 702(a), not to draw conclusions *for* the fact finder when no help is needed.

Brown's remaining arguments need only brief attention. He contends that the judge acted inconsistently by excluding his expert witness but allowing Hatch and Hyfantis to testify as witnesses for the government. There was no inconsistency. The judge prevented Hatch and Hyfantis from testifying about the substance of the Chicago Police Department's instructional program on the Fourth Amendment. The judge also precluded them from offering opinion testimony about Brown's police reports or the reasonableness of his use of force.

Finally, Brown argues that the judge abdicated her role as an "impartial referee of the adversarial system" by excluding his expert witness for reasons not raised by the government in its motion in limine. This argument, too, is meritless. The government advanced the relevant arguments, at least generally, in its motion in limine and in its responses to Brown's own pretrial motions.

AFFIRMED.